JONES v ALLSTATE INSURANCE COMPANY

Docket No. 83689. Submitted April 8, 1986, at Lansing. Decided April
    23, 1987.

Raynard Jones brought an action in the Genesee Circuit Court
    against Allstate Insurance Company, seeking no-fault personal
    injury protection benefits. Plaintiff alleged that he sustained
    injury when Ron Thompson fired a rifle at a car plaintiff was
    occupying. The allegation was supported by an affidavit signed
    by the attorney who represented Thompson in a criminal
    prosecution arising out of the shooting incident and by state-
    ments in the report of police officers who investigated the
    incident. Both plaintiff and defendant moved for summary
    judgment, with defendant contending plaintiff's injuries did not
    arise out of the ownership, operation, maintenance or use of a
    motor vehicle, as required by the no-fault act. The trial court,
    Thomas C. Yeotis, J., granted defendant's motion and denied
    plaintiff's motion. Plaintiff appealed.

The Court of Appeals *held:*

When an assault is directed at a motor vehicle itself, rather
    than its driver, a direct causal connection between the personal
    injury and the use of the motor vehicle as a motor vehicle
    exists, satisfying the requirements for recovery of personal
    injury protection benefits under the no-fault act. In this case,
    there is a material factual issue regarding whether the assault
    was directed at plaintiff or his automobile. Thus, the trial court
    properly denied plaintiff's motion for summary judgment, but
    erred in granting defendant's motion.

Affirmed in part and reversed in part.

1. Insurance — No-Fault — Personal Injury Protection — Mo-
    tor Vehicles.

Personal injury protection benefits for injuries arising out of the
    use of a motor vehicle as a motor vehicle are provided only

References

Am Jur 2d, Automobile Insurance, §§ 191, 192, 202, 340 *et seq.*

Injury or death caused by assault as within coverage of no-fault
    motor vehicle insurance. 44 ALR4th 1010.

Validity and construction of "no-fault" automobile insurance plans.
    42 ALR3d 229.

where the causal connection between an injury and the use of the motor vehicle as a motor vehicle is more than incidental or fortuitous (MCL 500.3105[1]; MSA 24.13105[1]).

2. INSURANCE — NO-FAULT — PERSONAL INJURY PROTECTION — AS-
SAULT.

Generally, injuries received in an assault upon a person who by mere fortuity happens to be in an automobile when the assault occurs are not compensable under the no-fault act; however, where an assault is directed at the automobile itself, rather than its driver, it is considered foreseeably identifiable with the use of the automobile as a motor vehicle, providing the requisite causal connection between the injury and the use of the automobile as a motor vehicle to allow recovery of no-fault benefits (MCL 500.3105[1]; MSA 24.13105[1]).

*Norman N. Gottlieb, P.C.* (by *Norman N. Gottlieb*), for plaintiff.

*Garan, Lucow, Miller, Seward, Cooper & Becker, P.C.* (by *Steven P. Iamarino* and *William J. Brickley*), for defendant.

Before: GRIBBS, P.J., and BRONSON and C. D. STEPHENS,* JJ.

PER CURIAM. Plaintiff Raynard Jones appeals from the Genesee Circuit Court's order of March 1, 1985, denying his motion for reconsideration of the court's order granting summary judgment to defendant Allstate Insurance Company. We reverse.

Plaintiff alleged that on January 12, 1983, he was occupying his father's 1974 Plymouth, which was insured by defendant. According to plaintiff's complaint, Ronald Thompson discharged a firearm into the driver's side of the vehicle, causing plaintiff to suffer serious personal injuries.

Defendant moved for summary judgment, contending that plaintiff's injuries did not arise out of the ownership, operation, maintenance or use of a

* Circuit judge, sitting on the Court of Appeals by assignment.

motor vehicle, as required by MCL 500.3105(1); MSA 24.13105(1). Defendant relied upon the affidavit of Roy Yingling, which reads as follows:

I, Roy Yingling, being duly sworn, depose and say:

1. That I am the claims representative assigned to handle the claim made by Plaintiff, Raynard Jones, for personal protection insurance benefits.

2. That I am fully aware of the facts and circumstances surrounding the subject incident, and that I have conducted a full and reasonable investigation of same.

3. That I am aware of no facts or allegations which make the subject insured vehicle anything more than the situs of the incident, and in no way is the subject vehicle implicated as an instrumentality of the harm alleged by Plaintiff Jones.

4. That pursuant to the allegedly applicable policy of automobile insurance, as it conforms to MCLA 500.3105(1), payments of personal protection insurance benefits are only to be made where an injury arises out of the "use, operation, or maintenance of a motor vehicle".

5. That based upon my training and experience in the area of automobile accident claims adjustment, it was, and is, my considered opinion that no benefits are due and owing to Plaintiff Raynard Jones as a result of the subject January 12, 1983 shooting incident, for the specific reason that the involvement of a motor vehicle in that instance was merely fortuitous, and further, because of [sic] the insured automobile was clearly not an instrumentality of harm.

Plaintiff submitted the affidavit of David S. Grant, Jr., which reads as follows:

I, David S. Grant, Jr., being duly sworn, depose and say:

1. That I am an attorney-at-law duly licensed to

practice in the State of Michigan, County of Gene-
see.

2. That I represented a certain Ron Thompson
in a criminal action brought against him for a
shooting incident that occurred in the City of Flint
on or about the 12th day of January 1983.

3. That I am fully aware of the facts and circum-
stances surrounding that incident, by virtue of my
interviews with the client and my review of the
investigation of the incident taken by the Detec-
tive Division of the Flint Police Department.

4. *That if called upon to testify, I will be compe-
tent to state under oath that Ron Thompson did
not discharge his firearm at Raynard Jones, but
rather at the vehicle in which Raynard Jones was
sitting and that he shot at that vehicle because it
had been driven upon his private property and
that he resented the encroachment of the vehicle
on his private property and that he fired upon said
vehicle in anger while in an irrational state of
mind.* [Emphasis added.]

Plaintiff also submitted a police report of the
incident, which stated, in pertinent part:

At 11:42 PM, Wednesday, January 12, 1983, Dis-
trict 203, Officers Kenneth Sparks and Robert
Studer, received a radio call from Officer Terrill
Bravender, dispatcher, to 4533 Trumbull regarding
a car hitting a house and someone being shot. On
arrival, the officers found that the incident had
taken place at 4529 Trumbull. The officers ob-
served a 1974 Plymouth, Michigan license FXL
550, setting [sic] under the severely damaged
northeast corner of the garage at that address.
The auto appeared to have run through the wall
and struck the chain link fence on the north side
of the lot. There was a male/black subject, latter
[sic] identified as the victim, Raynard Jones, m/b/
20, 1379 E. Downey, who, according to Flint Fire
Department Unit 1170, Paramedics Michael Mur-
phy and Mark Warren, and Unit 161 personnel,

David Wolfenden and Jack Smyth, appeared to have been shot in the left side. The officers were unable to talk to Jones as the Flint Fire Department paramedics were administering first aid to him. Jones was subsequently transported to Hurley Medical Center by Flint Fire Department Ambulance 161. At the hospital, he was examined by Dr. Tommie Stevens and Dr. Michael Macksood and was then transferred to Surgery. Officers Studer and Sparks were approached by one Ronald Thompson. Officer Studer asked Thompson if he had witnessed any part of the incident. Thompson said he had shot the gun (Jones), and that he (Thompson) was unsure of the name. Thompson told the man that he had the wrong house. Thompson said he then heard a car in his driveway with the horn blowing constantly. Thompson then opened the door and saw the 1974 Plymouth, FXL 550, containing a male/black subject. The man in the car was waving what looked to be a gun at him (Thompson). *Thompson said he then grabbed his rifle, which was located just inside his front door, pointed it in the direction of the car and fired it once at the car.* Thompson said he then saw the car go forward and then heard a loud crash. The officers obtained Thompson's I.D. Thompson invited the officers in to his house and pointed to the rifle, which was setting [sic] in the kitchen doorway against the wall. Thompson said he had used that rifle *to shoot at the car.* Sgt. Jerry Nugent arrived on the scene and advised the officers to take Thompson to the Criminal Investigations Bureau. Nugent then contacted the Patrol Desk and had Homicide Squad officers notified. [Emphasis added.]

A no-fault insurer must pay benefits for accidental bodily injury "arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle," MCL 500.3105(1); MSA 24.13105(1).

In *Thornton v Allstate Ins Co,* 425 Mich 643,

659-660; 391 NW2d 320 (1986), the Supreme Court noted:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle as a *motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "directly related to its character as a motor vehicle." *Miller v Auto-Owners, supra* [411 Mich 633; 309 NW2d 544 (1981)]. Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits.

An assault by an armed assailant upon the *driver* of a car is generally not the type of conduct that is reasonably identifiable with the use of an automobile, *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979), lv den 406 Mich 1014 (1979); *DAIIE v Higginbotham,* 95 Mich App 213; 290 NW2d 414 (1980); *Hamka v Automobile Club of Michigan,* 89 Mich App 644; 280 NW2d 512 (1979); *Ciaramitaro v State Farm Ins Co,* 107 Mich App 68; 308 NW2d 661 (1981), lv den 413 Mich 861 (1982); *Shaw v Allstate Ins Co,* 141 Mich App 331; 367 NW2d 388 (1985); *Thornton, supra,* 646. However, when an assault is directed at the vehicle itself, rather than the driver, the causal relationship is sufficient for liability, *Mann v DAIIE,* 111 Mich App 637; 314 NW2d 719 (1981), lv den 414 Mich 903 (1982); *Saunders v DAIIE,* 123 Mich App 570; 332 NW2d

613 (1983). In such a case, the automobile is not merely the situs of the injury, and there is a direct relation between the functional character of the motor vehicle and the injuries. See *Thornton, supra,* 660.

In this case, plaintiff has presented evidence indicating that the assault was directed not at him, but at his automobile. If that is so, defendant may be liable to him for his injuries. Because a material factual issue was presented, we reverse the trial court's grant of defendant's motion for summary judgment and affirm the trial court's denial of plaintiff's motion for summary judgment.

Affirmed in part and reversed in part.

BRONSON, J., did not participate.