MARZONIE v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 93152. Decided December 30, 1992. On application by the defendant for leave to appeal, the Supreme Court in lieu of granting leave, reversed the judgments of the Court of Appeals and the circuit court and remanded the case to the circuit court for entry of judgment for the defendant. Rehearing denied 442 Mich 1246.

Michael W. Marzonie, II, brought an action in the Genesee Circuit Court against Auto Club Insurance Association, seeking personal protection insurance benefits for injuries sustained when he was shot while occupying a motor vehicle. The court, Donald R. Freeman, J., entered judgment on a jury verdict for the plaintiff, finding that the shots were intended to hit the automobile. The Court of Appeals, MARILYN J. KELLY, P.J., and GRIBBS, J. (MACKENZIE, J., dissenting), affirmed in an opinion per curiam, finding that the injuries arose from the functional character of the motor vehicle (Docket No. 123383). The defendant seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice CAVANAGH, and Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court held:

Because the injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, the plaintiff is not entitled to recover no-fault benefits.

In determining whether a person who is shot while occupying a motor vehicle is entitled to no-fault benefits, the focus is not on the intent of the assailant, but rather upon the relation between the injury and the use of a motor vehicle as a motor vehicle. In this case, shots were fired during a continuing argument. The involvement of an automobile was incidental and fortuitous, and the plaintiff's injuries were not within the ordinary risks of driving a motor vehicle.

Reversed and remanded.

Justice LEVIN, dissenting, stated that the question what risks arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle is one of the more complex and difficult issues of factual assessment and statutory construction presented by the no-fault automobile liability act. The

trial judge and the Court of Appeals did their best, and their effort should not be dismissed with peremptory disposition and conclusory statements that raise still further questions. Peremptory disposition, without plenary consideration, full briefing, oral argument and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required. In this case, factual and legal assessment is required. Thus, peremptory disposition is not appropriate.

193 Mich App 332; 483 NW2d 413 (1992) reversed.

*Edwin W. Jakeway, P.C.* (by *Edwin W. Jakeway* and *Michael J. Kelly*), for the plaintiff.

*Gault, Davison, Bowers, Hill, Parker & McAra* (by *Edward B. Davison*), and *Gross & Nemeth,* of counsel (by *James G. Gross*), for the defendant.

PER CURIAM. The plaintiff was shot while occupying a motor vehicle. The circuit court awarded personal protection insurance benefits, and the Court of Appeals affirmed. 193 Mich App 332; 483 NW2d 413 (1992). Because the plaintiff's injuries did not arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle, we reverse the judgments of the circuit court and the Court of Appeals, and we remand this case to the circuit court for entry of a judgment in favor of the defendant.

I

As the plaintiff and a passenger were driving home from a party, they became embroiled in a dispute with three occupants of a vehicle driven by Vernon Oaks. After words were exchanged, the plaintiff began to pursue the Oaks vehicle at a high rate of speed. As the plaintiff drove, his passenger threw beer bottles at the Oaks vehicle.

Mr. Oaks drove home, where he and his friends

went inside. Moments later, he emerged, alone, bearing a shotgun.

Meantime, the plaintiff and his passenger arrived in their car and stopped near the Oaks home. The passenger said that the plaintiff did not move his car forward when he saw Mr. Oaks emerge from his house with a shotgun.[1] However, Mr. Oaks said that the car was moving slowly toward him:

> It was rolling towards me, just in just like a real creep. It wasn't, it wasn't driving, but it was just like in a creep.

As the car continued "at a real slight creep," Mr. Oaks tried to fire a shot at the car. Nothing happened when he pulled the trigger, however, so he "reracked the gun," aimed toward the grill of the car, and fired again. Mr. Oaks later explained that he had intended to stop the car, not shoot the driver.

It appeared to Mr. Oaks that he had missed the plaintiff's car completely. In fact, he had shot the plaintiff in the face and neck, inflicting permanent and serious injury.[2]

An instant after the shooting, the plaintiff's car began backing up. Traveling in reverse, it soon hit a curb, and the passenger noticed that the plaintiff was unconscious. Taking the wheel, the passenger drove him to the hospital.

As the plaintiff's car was driving away, Mr. Oaks attempted a third time to fire a shot, but again his gun would not discharge. He tried a

[1] The plaintiff had no memory of the events that took place at the Oaks home.

[2] Mr. Oaks was originally charged with assault with intent to murder, and possession of a firearm during the commission of a felony. He pleaded guilty of a reduced charge of careless discharge of a firearm, and spent nine months in jail.

fourth time, and the gun fired. The plaintiff says that this shot hit the fleeing car.

Mr. Oaks testified that he initially had fired in order to stop the plaintiff's car and because he was angry at the plaintiff's presence. Asked why he shot at the escaping car, he said that he was upset and wanted to stop the car. Mr. Oaks explained:

*Q.* What was your purpose in shooting the first time?

*A.* To stop the car.

*Q.* To stop it from coming toward you?

*A.* Stop it, period. I didn't understand why if I have a gun and you are in your car and you are in front of me and I have it up on my shoulder, I don't understand why you are still coming at me. I didn't, I didn't know what he was doing in the car. I didn't know if he was reaching for a gun or what. I didn't know what he was going to do. A lot of things was [sic] going through my mind. I didn't know what he was going to do.

*Q.* So you didn't want to take any chances, so you blasted first, is that right?

*A.* The car was coming at me and I shot the car.

*Q.* How did you think that would stop the car?

*A.* Excuse me?

*Q.* How did you think that that would stop the car?

*A.* Well, if you put a shot into the grill of a car it's going to blow the radiator, possibly the tank, it's going to overheat. It will stop the car.

*Q.* That was your idea?

*A.* Yeah.

*Q.* All right. But you didn't know you hit anything?

*A.* No. I thought I missed the whole car completely.

*Q.* All right, and for all you knew in the second shot when you ran down, you said you missed it, too?

*A.* At the, at the time, yes. At the time I thought I had missed that, too.

*Q.* Okay, and what was your purpose in shooting the second time?

*A.* To stop the car. That's why I aimed at the back tire and shot at the back tire.

*Q.* Why did you want to stop the car the first time?

*A.* Why would I want these people in my neighborhood, into my house and terrorizing my house?

*Q.* That's the reason you stopped it the first time, it was going away from you the second time, why did you shoot it that time?

*A.* The same intention, I wanted to stop the car.

*Q.* Why did you want to stop the car if it was going away from you and not endangering your neighborhood or you?

*A.* These people had followed me. I felt that my privacy had been violated.

*Q.* You were angry?

*A.* No, not angry, upset. I was upset, confused.

*Q.* You weren't angry?

*A.* Not angry, no, but I felt I was upset.

*Q.* What was upset, how do you define "Upset"?

*A.* I feel that there is a difference between angry and upset because upset was, it was, angry would be wanting to get back at you, okay? I didn't want to get back at them. I just wanted, I wanted something done, you know, not to him or against—not. . . [.]

*Q.* Take your time.

*A.* I'm trying to word this. I didn't feel that he was right in coming after me, okay?

*Q.* Okay.

*A.* So I felt that something should be done towards him not as, as, as . . . [.] As far as, okay, if I stopped the car then the police could be called and then something could be done about it, okay?

II

The plaintiff sought personal protection (first-

party) insurance benefits from the insurer.[3] After the demand was refused, the plaintiff filed the present suit.

MCL 500.3105(1); MSA 24.13105(1) provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

In his complaint, the plaintiff alleged that his injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. The defendant insurer denied the allegation, and later moved for summary disposition. In an order denying the defendant's motion, the circuit court explained:

> The court finds that the case of *Jones v Allstate Ins Co,* 161 Mich App 450 [411 NW2d 457] (1987), is controlling and that it is necessary that a jury determine the factual issue of whether the assailant, Vernon Oaks, intended to shoot either plaintiff Marzonie or Marzonie's car.

This matter was tried before a jury. In accordance with the court's earlier ruling, the sole question submitted to the jury was whether Mr. Oaks intended to shoot the plaintiff, or only to shoot the plaintiff's vehicle. After deliberating less than half an hour, the jury returned its finding that "Vernon Oaks intended to shoot only the automobile of Michael Marzonie . . . ."

Had the jury found that Mr. Oaks intended to

---

[3] At the time these events took place, the plaintiff was driving an automobile owned by his mother, who had purchased an insurance policy from the defendant insurer. While the insurer denies liability in this case, it does not deny that the plaintiff was insured under his mother's policy. See MCL 500.3114; MSA 24.13114.

shoot the plaintiff, judgment would have been entered for the defendant. When the jury instead found that Mr. Oaks intended to shoot the plaintiff's car, the circuit court was prepared to enter judgment in favor of the plaintiff. Before entry of judgment for the plaintiff, the defendant moved unsuccessfully for entry of a judgment in its favor or, alternatively, for a new trial. The motion was denied.

The Court of Appeals affirmed. Citing *Jones,* and saying that because the plaintiff's injuries "stemmed from the functional character of the motor vehicle," the Court of Appeals concluded that the plaintiff was entitled to first-party benefits. 193 Mich App 337.

Writing in dissent, Judge MacKENZIE said that "plaintiff was injured as a result of his dispute with Oaks, and plaintiff's automobile merely served as the target of Oaks' gunfire and the situs where plaintiff was shot." *Id.* at 339.

The defendant has applied for leave to appeal the judgment of the Court of Appeals.

III

Throughout the time that no-fault automobile insurance has existed in Michigan, cases have arisen involving insured persons who were shot or otherwise assaulted while occupying motor vehicles. The basic rule, correctly developed by the Court of Appeals, is stated in *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979). There, the plaintiff was sitting in his parked car, which was idling. An individual opened the passenger door and pointed a gun at him. The plaintiff put the car in reverse, and accelerated. The assailant fired two or three shots into the car, striking the plaintiff.

The Court of Appeals found in *O'Key* that the plaintiff's injury did not arise out of the ownership, operation, maintenance, or use of an automobile:

> [We] conclude that the injuries sustained by plaintiff did not arise out of the ownership, operation, maintenance or use of the automobile. Although plaintiff was an occupant of an automobile at the time he sustained the injury, this is not a controlling consideration in resolving this issue. The automobile was not the instrumentality of the injury. Rather, its role in this matter was incidental. Plaintiff's occupancy of the car was a fortuity, in no way connected with the assault. Nor is an assault by an armed assailant upon the driver of a car the type of conduct that is "reasonably identifiable" with the use of a car. Since the injury in this case did not arise out of the ownership, operation, maintenance or use of the car, the trial judge properly granted defendant's motion for summary judgment in this case. [89 Mich App 530.]

This Court addressed a similar situation in *Thornton v Allstate Ins Co,* 425 Mich 643; 391 NW2d 320 (1986). The plaintiff sought first-party benefits for injuries suffered during an armed robbery that was committed by a passenger of his taxicab. This Court denied benefits to the plaintiff, explaining:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be

"directly related to its character as a motor vehicle." *Miller v Auto-Owners* [*Ins Co,* 411 Mich 633; 309 NW2d 544 (1981)]. Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle.[10] Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits.

The connection in this case between the debilitating injuries suffered by Mr. Thornton and the use of the taxicab as a motor vehicle is no more than incidental, fortuitous, or "but for." The motor vehicle was not the instrumentality of the injuries. Cf. *Gajewski v Auto-Owners Ins Co,* 414 Mich 968; 326 NW2d 825 (1982). The motor vehicle here was merely the situs of the armed robbery—the injury could have occurred whether or not Mr. Thornton used a motor vehicle as a motor vehicle. Cf. *Saunders v DAIIE,* 123 Mich App 570; 332 NW2d 613 (1983), and *Mann v DAIIE,* 111 Mich App 637; 314 NW2d 719 (1981). The relation between the functional character of the motor vehicle and Mr. Thornton's injuries was not direct—indeed, the relation is at most incidental.

---

[10] We reject the focus that the Florida and Minnesota courts place upon the intent of the assailant as providing the requisite nexus between the injury and the use of the motor vehicle. See generally *Government Employees Ins Co v Novak* [453 So 2d 1116 (Fla, 1984)], and *Meric v Mid-Century Ins* [343 NW2d 688 (Minn App, 1984)]. Under our no-fault legislation, intentionality is relevant where specified by the statute. See, e.g., MCL 500.3105(4); MSA 24.13105(4). However, for purposes of determining whether the requisite causation exists under § 3105(1), the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle.

---

[425 Mich 659-660.]

This passage includes references to *Saunders v DAIIE* and *Mann v DAIIE, supra.*[4] In *Saunders,* a

---

[4] Among the arguments presented by the parties in this case is a dispute concerning the significance in *Thornton* of the "Cf." citation of *Saunders* and *Mann.* The abbreviation is defined in this fashion:

passenger in a moving automobile was seriously injured when struck by a projectile that flew through an open window. The Court of Appeals said that "[s]uch an assault is, unfortunately, part of the normal risk of operating a motor vehicle and it must be considered foreseeably identifiable with the normal use of the vehicle." 123 Mich App 572.

The plaintiff in *Mann* was injured when a person threw a stone at the plaintiff's vehicle from an overpass as the plaintiff was driving on a highway. Explaining that "[i]n today's society, unfortunately, there are unbalanced individuals who take perverse enjoyment out of dropping rocks and other objects on automobiles as they pass under overpasses on expressways," the Court of Appeals concluded that "[t]here is a direct causal relationship between the driving of the vehicle and the assault." 111 Mich App 639.

In *Jones,* the Court of Appeals inferred from *Saunders* and *Mann* the principle that an insured may recover where an assault is aimed at a vehicle, not at a person. Because the shooter in *Jones* claimed to have been shooting at the insured's car, the Court of Appeals reversed the summary judgment that the circuit court had entered in favor of the insurer.

However, *Jones* marked a departure by the Court of Appeals from the principles stated in *Thornton.* First-party benefits are available under MCL 500.3105(1); MSA 24.13105(1) where the in-

Cf. An abbreviated form of the Latin word *confer,* meaning "compare." Directs the reader's attention to another part of the work, to another volume, case, etc., where contrasted, analogous, or explanatory views or statements may be found. [Black's Law Dictionary (5th ed), p 208.]

In *Thornton,* the abbreviation "Cf." preceded cases that were being contrasted.

volvement of the car in the injury is "directly related to its character as a motor vehicle." 425 Mich 659. The connection between the injuries and the use of the motor vehicle must be "more than incidental, fortuitous, or 'but for.' " *Id.* Further, "the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle," not be upon "the intent of the assailant . . . ." *Id.,* 425 Mich 660, n 10.

Other post-*Thornton* gunshot cases are illustrative. In *Kreighbaum v Automobile Club Ins Ass'n,* 170 Mich App 583; 428 NW2d 718 (1988), hunters shot at a deer standing near a road. The animal ran onto the road, and the plaintiff slowed her automobile to avoid a collision with the deer. The hunters fired again, shooting through the door of the plaintiff's car, causing serious injury. The Court of Appeals explained the similarity to *Saunders* and *Mann:*

> This case is similar to two recent Court of Appeals cases where the plaintiffs recovered no-fault benefits based on injuries caused by rocks or other objects being thrown at or dropped on cars, intentionally or otherwise, as the cars proceeded down the expressway. *Mann v DAIIE,* 111 Mich App 637, 639-640; 314 NW2d 719 (1981), lv den 414 Mich 903 (1982); *Saunders v DAIIE,* 123 Mich App 570, 572; 332 NW2d 613 (1983). Here, plaintiff was driving her car down a rural road on the opening day of deer hunting season. When plaintiff, behaving as any prudent driver would, slowed her car to avoid a collision when a deer ran onto the road, the car caused her to be put in a position where she could be hit by the hunters' gunfire. Hence the causal connection between plaintiff's injuries and the ownership, maintenance, or use of her vehicle was not merely fortuitous or incidental, and the trial court erred when prohibiting plaintiff's recovery under the no-fault act by granting sum-

mary disposition in favor of defendant. [170 Mich App 585-586.]

One may contrast *Auto-Owners Ins Co v Rucker,* 188 Mich App 125; 469 NW2d 1 (1991). In *Rucker,* a young woman standing in front of a friend's house was killed during a drive-by shooting. Her family sought no-fault benefits. The Court of Appeals said that benefits were owed only where "[t]he injury must be foreseeably identifiable with the normal use of the vehicle." *Id.* at 127. Because the use of the automobile was only "incidental" to this shooting, the Court of Appeals upheld a summary disposition in favor of the insurer.

IV

Dissenting in the present case, Judge MACKENZIE summarized *Thornton,* and then explained:

> This case presents a similar situation. As in *Thornton,* the inherent nature or the functional character of plaintiff's motor vehicle did not cause his injuries. Instead, plaintiff was injured as a result of his dispute with Oaks, and plaintiff's automobile merely served as the target of Oaks' gunfire and the situs where plaintiff was shot. See 425 Mich 660-661.
>
> The relationship between the functional character of plaintiff's automobile and his injuries is too indirect to satisfy the statutory requirement that the injuries "aris[e] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." Because a motor vehicle was not the cause of plaintiff's injuries, he was not entitled to recover no-fault benefits. [193 Mich App 338-339.]

We agree that the plaintiff was not entitled to recover no-fault benefits. As we observed in *Thorn-*

*ton,* the focus is not on the intent of the assailant —instead, "the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle." 425 Mich 660, n 10.

*Saunders* and *Mann* are unlike *Thornton,* in that the hazard experienced by those insureds was directly tied to their use of a motor vehicle as a motor vehicle. The relationship between that use and the hazard is the key to *Saunders* and *Mann,* not the subjective intent of the unidentified assailants.[5]

In the present case, the testimony of the plaintiff clearly demonstrates that shots were fired during the continuation of an argument that had begun before the chase. The involvement of the automobiles was incidental and fortuitous. Although Mr. Oaks says that the plaintiff's car was moving toward him at a "creep," the shooting arose out of a dispute between two individuals, one of whom happened to be occupying a vehicle at the moment of the shooting. Unlike the occurrences in *Mann, Saunders,* and *Kreighbaum,* the harm that befell this plaintiff was not within the ordinary risks of driving a motor vehicle.

We therefore reverse the judgments of the circuit court and the Court of Appeals, and we remand this case to the circuit court for entry of a judgment in favor of the defendant.[6] MCR 7.302(F)(1).

CAVANAGH, C.J., and BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

---

[5] We caution that an assailant's intent is not completely irrelevant in every situation. For instance, suppose the events that occurred in *Saunders* and *Mann* had been caused by assailants who lay in wait for those particular victims, intending to assault them by launching projectiles at them. In this opinion, we need not reach the question whether such injuries would arise "out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle."

[6] The motion for leave to file a brief amicus curiae is granted.

LEVIN, J. (*dissenting*). The jury found that the shotgun was fired at the automobile plaintiff, Michael W. Marzonie, II, was driving, rather than at him. The Court of Appeals ruled that because, in contrast with other decisions there referred to, "the assault was directed at the vehicle plaintiff was driving, not at plaintiff" the instant case was distinguishable from those cases. The Court continued: "Here, the car was not merely the situs of the insured's injuries; plaintiff would not have been shot had he not been in the car. Rather, his injuries stemmed from the functional character of the motor vehicle."[1]

Whether one agrees with the analysis of the majority in the Court of Appeals, or prefers the analysis of the dissenting judge, the Court of Appeals discharged its obligation to the litigants, their counsel, and the bench and bar, to provide a reasoned explanation for its decision. The majority, in peremptorily reversing the decision of the Court of Appeals, has not provided a reasoned explanation for the Court's decision.

I

While the per curiam opinion, because of its length and discussion of decisions of this Court and the Court of Appeals, might appear to provide a reasoned explanation, the bulk of the analysis is obiter dictum about cases not now before the Court.

As appears from the syllabus, the Reporter of Decisions gleaned the following from the per curiam opinion:

Because the injuries did not arise out of the ownership, operation, maintenance, or use of a

---

[1] 193 Mich App 332, 337; 483 NW2d 413 (1992).

motor vehicle as a motor vehicle, the plaintiff is not entitled to recover no-fault benefits.

In determining whether a person who is shot while occupying a motor vehicle is entitled to no-fault benefits, the focus is not on the intent of the assailant, but rather upon the relation between the injury and the use of a motor vehicle as a motor vehicle. In this case, shots were fired during a continuing argument. The involvement of an automobile was incidental and fortuitous, the plaintiff's injuries were not within the ordinary risks of driving a motor vehicle.

One may agree with the majority's instinct that plaintiff's injuries were not within the "ordinary risks of driving," but the majority has not explained how it reached that conclusion. Nor has it explained on what basis it has substituted "ordinary risks of driving" for the statutory phrase "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ."[2] The profession, trial and appellate judges, will have to struggle with what are the "ordinary risks of driving," a new gloss on the statute.

Stating that the focus is "not on the intent of the assailant" is somewhat more helpful, but does not explain on what one should focus. The statement that the focus should be on the "relation between the injury and the use of a motor vehicle as a motor vehicle" merely restates in another form the language of the statute.

The focus on whether the shots were fired during a "continuing argument," with the implication that if one concludes that they were that renders the involvement of the automobile "incidental and fortuitous," says more than need be said to decide this case, and I expect will be troublesome unless

---

[2] MCL 500.3105(1); MSA 24.13105(1).

confined to the facts of this case. The Detroit Free Press reported on December 28, 1992, that a woman traveling home with her family was fatally shot by a tailgating motorist who apparently thought her husband was not driving fast enough. Thus, that the shots were fired during a continuing argument does not necessarily justify the conclusion that the involvement of the automobile was incidental and fortuitous. The instinct of the majority might be different if the vehicle the shooter was driving had chased the Marzonie vehicle following a confrontation at a traffic light.

In the instant case, the shooter, Vernon Oaks, testified that the reason he fired the shotgun was that Marzonie's automobile was moving toward him. This is not a case where the shooter and the person assaulted were previously acquainted and the shooter set out to find and assault the victim; in such a case, the place where the assault occurs might be incidental and fortuitous.

II

Marzonie and a companion were driving home from a party.[3] They approached a stop light at which another automobile, driven by Oaks, was waiting. One of Oaks passengers made an indecent gesture toward Marzonie or his passenger.[4] The reason for the gesture is unexplained.

Marzonie responded by jumping out of the vehicle and taunting the occupants of the Oaks vehicle as if he wanted to fight with its occupants. Oaks,

---

[3] Marzonie was nineteen years old and his companion eighteen. Both had been drinking alcoholic beverages.

[4] An occupant of the Oaks vehicle testified that either Marzonie or his companion made indecent hand gestures toward the occupants of the Oaks vehicle. In all events, gestures were made and Marzonie left his vehicle to taunt the occupants of the Oaks vehicle who were fifteen and eighteen years of age and were apparently returning from a different party.

running the red light, left the scene. Marzonie returned to his vehicle and chased the Oaks vehicle. Marzonie and his companion were throwing beer bottles at the Oaks vehicle during the chase. The bottles struck the vehicle several times, breaking a window in the process.

Oaks and his passenger testified that they tried to "lose" Marzonie throughout the chase. Oaks drove home and he and his friends went inside. As they were doing so, Marzonie's vehicle approached the Oaks home. Oaks returned outside with a gun.[5] At some point, Marzonie's vehicle began to advance "at a real slight creep" toward Oaks. Oaks, allegedly aiming only at the front grill of the vehicle, fired the gun, striking Marzonie in the left eye. Marzonie backed the vehicle up as if to turn it around before losing consciousness. His companion took the wheel. Oaks fired at the Marzonie vehicle a second time, striking the left rear wheel. The companion sped off, driving Marzonie to the hospital.

### III

The question what risks arise out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle is one of the more complex and difficult issues of factual assessment and statutory construction presented by the *no-fault* automobile liability act.[6] It is the subject of over sixty pages in one treatise.[7] This Court and the Court of Appeals have struggled inconclusively with these issues on a number of occasions. The

---

[5] There was some testimony that Marzonie or his companion threw beer bottles at Oaks home before Oaks returned outside with the gun.

[6] MCL 500.3101; MSA 24.13101.

[7] 1 No-Fault and Uninsured Motorist Automobile Insurance, ch 9, Horton, Scope of Coverage—Type of Incident.

trial judge and the Court of Appeals did their best, and their effort should not be dismissed with peremptory disposition and conclusory statements that raise still further questions to befuddle the profession.

Peremptory disposition, without plenary consideration, full briefing, oral argument, and an opportunity for the profession to file briefs as amici curiae, should be reserved for cases in which the law is settled and factual assessment is not required.[8] In the instant case, as indicated in the majority opinion, factual and legal assessment is required. Peremptory disposition is not appropriate.

The Court should either grant or deny leave to appeal.

---

[8] *People v Wright,* 439 Mich 914, 914-915 (1992) (LEVIN, J., dissenting); *Roek v Chippewa Valley Bd of Ed,* 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co,* 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little,* 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn,* 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Ctr, Inc,* 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co,* 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia,* 436 Mich 872 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo,* 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens,* 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey,* 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm,* 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp,* 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting); *Rochester Hills v Southeastern Oakland Co Resource Recovery Authority,* 440 Mich 852, 852-856 (1992) (LEVIN, J., dissenting).

See *Schweiker v Hansen,* 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt,* 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa,* 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").