MUELLER v AUTO CLUB INSURANCE ASSOCIATION

Docket No. 142201. Submitted August 4, 1993, at Detroit. Decided December 20, 1993, at 9:40 A.M. Leave to appeal sought.

George P. Mueller brought an action in the Washtenaw Circuit Court against Auto Club Insurance Association, seeking no-fault personal protection insurance benefits for injuries he sustained when struck by a deer hunter's stray bullet while driving a pickup truck. The court, Patrick J. Conlin, J., granted partial summary disposition for the plaintiff with respect to the question of the defendant's liability. The defendant appealed.

The Court of Appeals *held:*

Personal protection insurance benefits are payable pursuant to MCL 500.3105(1); MSA 24.13105(1) for accidental bodily injury arising out of the use of a motor vehicle as a motor vehicle only where the causal connection between the injury and the use of the motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the motor vehicle in the injury should be directly related to its character as a motor vehicle, and the harm that befell the injured person must be within the ordinary risks of driving a motor vehicle.

In this case, the defendant has no liability under § 3105(1) because the motor vehicle was merely the site of the plaintiff's injury, and being struck by a stray bullet is not among the foreseeable risks of driving a motor vehicle.

Reversed.

*Logeman & Associates, P.C.* (by *Robert E. Logeman* and *James A. Iafrate*), for the plaintiff.

*Conlin, McKenney & Philbrick, P.C.* (by *Allen J. Philbrick*) (*Gross & Nemeth* by *James G. Gross,* of Counsel), for the defendant.

Before: BRENNAN, P.J., and CORRIGAN and R. C. ANDERSON,* JJ.

R. C. ANDERSON, J. This is a no-fault case. Defendant insurer appeals as of right an order of the Washtenaw Circuit Court that granted partial summary disposition pursuant to MCR 2.116(C)(10) to the plaintiff insured on the question of defendant's liability for first-party benefits. The same order denied defendant's motion for summary disposition. We reverse.

The relevant facts are not in dispute. Plaintiff was the occupant of a pickup truck that was struck by a bullet during firearm deer hunting season. The shot had been aimed at a deer, but missed the deer, traveled some distance, and hit the truck, which had not been visible to the hunter. The bullet shattered the passenger-side window of the truck and struck plaintiff in the head. The shooting appears to have been wholly accidental, and plaintiff's location in the path of the bullet was mischance. It is apparent from the parties' agreement on certain details that it would have been difficult, if not impossible, for the hunter to have seen the truck, which was white, against the snow-covered landscape. The area between the truck and the hunter was a forest, and the grade of the two-track road on which the truck was traveling was lower than the surrounding ground.

At issue is whether plaintiff suffered "accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle," MCL 500.3105(1); MSA 24.13105(1), for purposes of no-fault personal injury protection benefits. We conclude that he did not, and reverse.

In *Thornton v Allstate Ins Co,* 425 Mich 643; 391

---

* Circuit judge, sitting on the Court of Appeals by assignment.

NW2d 320 (1986), the plaintiff, a taxi driver, sought personal injury protection (PIP) benefits after he was injured by an armed robber in his cab. In concluding that the plaintiff was not entitled to benefits, our Supreme Court held:

> In drafting MCL 500.3105(1); MSA 24.13105(1), the Legislature limited no-fault PIP benefits to injuries arising out of the "use of a motor vehicle *as a motor vehicle.*" In our view, this language shows that the Legislature was aware of the causation dispute and chose to provide coverage only where the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." The involvement of the car in the injury should be "*directly related to its character as a motor vehicle.*" *Miller v Auto-Owners,* [411 Mich 633, 638-639; 309 NW2d 544 (1981)]. Therefore, the first consideration under MCL 500.3105(1); MSA 24.13105(1), must be the relationship between the injury and the vehicular use of a motor vehicle. Without a relation that is more than "but for," incidental, or fortuitous, there can be no recovery of PIP benefits. [*Thornton, supra,* pp 659-660; emphasis in original.]

Two earlier Court of Appeals opinions were noted, but not discussed, in the *Thornton* opinion, *Saunders v DAIIE,* 123 Mich App 570; 332 NW2d 613 (1983), and *Mann v DAIIE,* 111 Mich App 637; 314 NW2d 719 (1981). *Thornton* invited the reader to compare the situations in those two opinions against the situation in *Thornton,* where the motor vehicle was merely the situs of the armed robbery and the injury could have occurred whether or not the plaintiff had used his taxi as a motor vehicle. *Thornton, supra,* p 660. In *Mann,* the plaintiff was injured when a stone dropped from an overpass hit his car, causing him to

sharply turn his head and injure his neck. This Court reversed the order of summary disposition granted to the insurer, implying that the attack was foreseeable and holding that, because such attacks are directed at automobiles, not drivers, and because such attacks happen only if an automobile is passing under an overpass at a particular time, there was a direct causal relationship between the operation of the vehicle and the assault. *Id.*, pp 639-640. In *Saunders,* the plaintiff was struck by a piece of concrete that was of unknown origin and thrown through the open window of a vehicle. *Id.*, p 571. This Court, relying on *Mann,* expressly noted that such incidents were foreseeable in the normal use of a vehicle and were aimed at automobiles, not drivers. *Id.*, p 572. The panel concluded that a direct causal relationship existed between the injury and the use of the vehicle. *Id.*

More recently, the Supreme Court, in the course of reaffirming *Thornton,* briefly explained the distinction between the holdings in *Thornton, Mann,* and *Saunders.* In *Marzonie v Auto Club Ins Ass'n,* 441 Mich 522; 495 NW2d 788 (1992), the plaintiff was in his automobile when he was shot by a man who was on foot and with whom the plaintiff earlier had engaged in an argument. The Supreme Court held (1) that the intent of the plaintiff's assailant either to shoot the plaintiff or to shoot the automobile was irrelevant, disapproving of *Jones v Allstate Ins Co,* 161 Mich App 450; 411 NW2d 457 (1987), (2) that, pursuant to *Thornton,* the proper inquiry is the relation between the injury and the use of a motor vehicle as a motor vehicle, and (3) that the involvement of the plaintiff's automobile was merely incidental and fortuitous and not within the ordinary risks of driving

a motor vehicle. *Marzonie, supra,* pp 531-534. With respect to *Mann* and *Saunders,* the Court stated:

> *Saunders* and *Mann* are unlike *Thornton,* in that the hazard experienced by those insureds was directly tied to their use of a motor vehicle as a motor vehicle. The relationship between the use and the hazard is the key to *Saunders* and *Mann,* not the subjective intent of the unidentified assailants. . . .
>
> . . . Unlike the occurrences in *Mann, Saunders,* and *Kreighbaum* [v *Automobile Club Ins Ass'n,* 170 Mich App 583; 428 NW2d 718 (1988)], *the harm that befell this plaintiff was not within the ordinary risks of driving a motor vehicle.* [*Marzonie, supra,* p 534; emphasis added.]

Unlike *Mann, Saunders,* and a host of other shooting cases involving no-fault claims, no intentional tort or criminal act[1] is alleged to have been a cause of plaintiff's injury. In light of the Supreme Court's repeated holding that the intent of an assailant is irrelevant, however, this fact is of no consequence. Rather, *Marzonie* attempts to explain when the involvement of an automobile in an injury is, pursuant to *Thornton,* directly related to the vehicular use of the motor vehicle. In doing so, the Court has introduced a test of foreseeability to the analysis of this question—whether the harm that occurred is "within the ordinary risks of driving a motor vehicle." *Marzonie, supra,* p 534. This conclusion is bolstered by *Marzonie's* tacit approval of *Mann* and *Saunders,* both of whose holdings incorporated an element of foreseeability, and, indeed, appears to be the only way in which those Court of Appeals opinions can be reconciled

---

[1] The record is silent with regard to whether any criminal proceedings were instituted against the hunter who fired the shot.

with *Thornton.* See also *Auto-Owners Ins Co v Rucker,* 188 Mich App 125; 469 NW2d 1 (1991). The test of foreseeability, however, is tempered by the following statement of the Supreme Court in *Thornton:*

> While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle *as a taxicab,* the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous. The mere foreseeability of an injury as an incident to a given use of a motor vehicle is not enough to provide no-fault coverage where the injury itself does not result from the use of the motor vehicle as a motor vehicle. Likewise, the mere absence of foreseeability would not necessarily preclude coverage. [*Thornton, supra,* p 661; emphasis in original.]

See also *Rucker, supra* (use of automobile in drive-by shooting not foreseeably identifiable with "normal use" of vehicle).

In the present case, although plaintiff's injury occurred while he was in a motor vehicle, any relation between the injury and the use of the vehicle "as a motor vehicle" is merely incidental, fortuitous, and "but for." Plaintiff was simply in the wrong place at the wrong time, although he had arrived at that place and time in a motor vehicle. Plaintiff could have been injured as easily if he were hiking, skiing, or hunting. The vehicle was not the instrumentality of the injury, *Thornton, supra,* p 660, nor was the injury caused by the inherent nature of the vehicle, *id.,* p 661. Nor is the risk of a stray bullet passing through an automobile "within the ordinary risks of driving a

motor vehicle." *Marzonie, supra,* p 534.[2] Moreover, we reject plaintiff's argument that the color of the truck in which he was riding, the color of the background, and the location and condition of the road on which he was traveling make his injury directly related to the use of the motor vehicle as a motor vehicle. These factors, while a contributing cause of the injury, are unrelated to the vehicle itself in its general function as a motor vehicle. *Thornton, supra,* p 661.

Plaintiff argues, however, that this case is controlled by *Kreighbaum, supra,* a factually similar case in which the plaintiff slowed her automobile in order to avoid hitting a deer and was struck by hunters' bullets. This Court, with little discussion, held that the causal connection between the injury and her use of the vehicle was not incidental because "[w]hen plaintiff, behaving as any prudent driver would, slowed her car to avoid a collision when a deer ran onto the road, the car caused her to be put in a position where she could be hit be the hunters' gunfire." *Id.,* p 586.

In view of the analysis we have set forth above with respect to MCL 500.3105(1); MSA 24.13105(1), controlling Supreme Court precedent, and the facts of the present case, we conclude that *Kreighbaum* was wrongly decided. The use of a vehicle to convey a person to a place where danger exists is insufficient, standing alone, to trigger coverage. While the sudden appearance of a deer on a road is within the ordinary risks of driving an automobile, stray gunfire is not. The injuries suffered by the plaintiff in *Kreighbaum* were not

[2] Of course, the *extraordinary* risk of stray gunfire striking a motor vehicle can be considered higher in some parts of the state during firearm deer hunting season. No-fault coverage, however, does not depend on what particular species of game are in season.

directly related to her use of the motor vehicle, but were, at most, incidental to her operation of the automobile in that the vehicle transported her into the bullets' path. Finally, the Supreme Court's discussion of *Kreighbaum* in *Marzonie, supra,* pp 532-533, is dicta, not an endorsement of the reasoning in *Kreighbaum.*

Reversed. Judgment to be entered for defendant.