*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICK A. COULTER,

UNPUBLISHED
August 13, 2019

Plaintiff-Appellee,

v

No. 343868
Washtenaw Circuit Court
LC No. 17-000660-NF

AUTO CLUB INSURANCE ASSOCIATION,

Defendant-Appellant.

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

FORT HOOD, J. (*dissenting*).

Because I would conclude that plaintiff was engaged in an activity closely related to the transportational function of a motor vehicle, and that there was a sufficient causal connection between plaintiff's injury and his use of the motor vehicle, I respectfully dissent.

As the majority notes, the initial scope of coverage for PIP benefits is set forth in MCL 500.3105(1), which provides:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

In *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245; 901 NW2d 534 (2017), our Supreme Court wrote:

> [T]he phrase "use of a motor vehicle 'as a motor vehicle'" would appear to invite contrasts with situations in which a motor vehicle is not used "as a motor vehicle." This is simply to say that the modifier "as a motor vehicle" assumes the existence of other possible uses and requires distinguishing use "as a motor vehicle" from any other uses. While it is easily understood from all our experiences that most often a vehicle is used "as a motor vehicle," i.e., to get from one place to another, it is also clear from the phrase used that the Legislature wanted to except those other occasions, rare as they may be, when a motor vehicle is used for other purposes, e.g., as a housing facility of sorts, as an advertising

-1-

display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum . . . . It seems then that when we are applying the statute, the phrase "as a motor vehicle" invites us to determine if the vehicle is being used for transportational purposes. [*Kemp*, 500 Mich at 257-258 (quotation marks and citation omitted).]

The *Kemp* Court emphasized that, to determine whether a motor vehicle was being used as a motor vehicle at the time of an injury, the proper inquiry "appropriately focuses on the activity the plaintiff was engaged in," and "whether that activity was *closely related* to the vehicle's transportational function." *Id*. at 260. It is not "require[d] that the type of movements made or the injuries suffered be unique to motor vehicles or that they [] only occur in a motor vehicle," and importantly, is it not a requirement "that the activity at issue 'result from' the vehicle's transportational function." *Id*. at 260-262.

In this case, plaintiff testified at his deposition that his injury occurred while he and Ybarra were engaged in the transportation of pallets of donated canned goods. Plaintiff and Ybarra were utilizing a delivery truck *as a delivery truck*. It is my opinion that the activity plaintiff was engaged in at the time of his injury—facilitating the pick-up and delivery of charitable goods—was closely related to the transportational function of the box truck at issue.

In *Drake v Citizens Ins Co of America*, 270 Mich App 22, 22-24; 715 NW2d 387 (2006), the plaintiff was injured while attempting to unclog a grain delivery truck's auger system for unloading animal feed into a silo. The plaintiff was outside the vehicle attempting to unclog the truck's auger system when the auger system was unintentionally activated, causing the plaintiff to lose a finger. *Drake*, 270 Mich App at 24. Despite the defendant's arguments that the circumstances constituted one of the "rare instances" in which a motor vehicle was *not* being used as a motor vehicle when the injury occurred, we held that "[t]he vehicle involved [was] a delivery truck, and it was being used as such when the injury occurred." *Id*. at 26. Accordingly, the plaintiff's injury "closely related to the motor vehicle's *transportational function*, and therefore arose out of the operation, ownership, maintenance, or use of a motor vehicle as a motor vehicle." *Id*.

Similarly, in *Walega v Walega*, 312 Mich App 259, 266; 877 NW2d 910 (2015), the plaintiff tied a rope around a gun safe and his wife used a truck to pull the safe out of a garage so that it could then be loaded onto the truck. As the safe dragged across the driveway, it hit a raised portion of pavement and tipped over onto the plaintiff's leg. *Walega*, 312 Mich App at 263. We determined that the plaintiff's injury was closely related to the transportational function of the vehicle because using "a truck to transport an item is consistent with a truck's inherent nature and in accordance with its intended purpose." *Id*. at 271. Thus, the plaintiff's "injury occurred while the truck was being used as a motor vehicle." *Id*. at 271.

Finally, in *Kemp*, the plaintiff placed several items behind the driver's seat of his truck, and proceeded to drive home from work. *Kemp*, 500 Mich at 249. When plaintiff arrived and went to retrieve the items, plaintiff reached into the vehicle "and sustained an injury as he was lowering [the items] from the vehicle." *Id*. The Michigan Supreme Court noted: "We have little difficulty concluding that a person who is engaged in the activity of unloading his or her

personal effects from a vehicle upon arrival at a destination is using the vehicle for its transportation function, i.e., for the conveyance of persons or objects from one place to another." *Id*. at 260.

*Drake*, *Walega*, and *Kemp* all stand for the proposition that an injury stemming from the use of a motor vehicle to transport property from one place to another satisfies the statutory requirement that an injury arise out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. I do not believe the present case is one of the rare instances in which a motor vehicle was used for a separate, nontransportational purpose, see *id*. at 257, and although it was unnecessary for the majority to address this issue because of their causality analysis, I would have concluded that plaintiff sufficiently established that his injury was sustained while he was using the charity's box truck as a motor vehicle.

Next, separate from the question of whether an activity sufficiently relates to a vehicle's transportational purpose is the question of whether "the causal connection between the injury and the use of the motor vehicle as a motor vehicle 'is more than but for, incidental, or fortuitous.' " *Kemp*, 500 Mich at 263, quoting *Thornton v Allstate Ins Co*, 425 Mich 643, 659-660; 391 NW2d 320 (1986). The causal connection must be more than incidental for a plaintiff to recover PIP benefits. *Id*. Our Supreme Court first adopted this particular standard in *Thornton*, wherein the Court determined that our Legislature intended "a causal relation greater than mere 'but for' cause between the injury and the use of a motor vehicle." *Id*. at 646, 652-659. *Thornton* held that the "[t]he involvement of the car in the injury should be directly related to its character as a motor vehicle," or, stated differently, the causation inquiry must determine whether the motor vehicle was the "instrumentality" of the injury. *Id*. at 659-660 (quotation marks and citation omitted).

The majority relies upon *Morosini v Citizens Ins Co*, 461 Mich 303; 602 NW2d 828 (1999) and *Mueller v Auto Club Ins Ass'n*, 203 Mich App 86; 512 NW2d 46 (1993) to hold that plaintiff failed to establish a sufficient causal connection between his injury and his use of the box truck. In *Morosini*, the plaintiff was rear ended while driving, and after exiting his vehicle to assess whether it was damaged, the plaintiff was assaulted by the driver of the other vehicle. *Morosini*, 461 Mich at 305. Our Supreme Court concluded that PIP benefits were unavailable because the plaintiff "was injured by another person's rash and excessive response" to a minor traffic accident, and thus, the injury was merely incidental to the use of the motor vehicle. *Id*. at 311. In *Meuller*–perhaps the quintessential example of a fortuitous and unexpected injury—the plaintiff was the occupant of a pickup truck and was struck in the head by a stray bullet during deer hunting season. *Mueller*, 203 Mich App at 90-91. We aptly concluded in that case that the injury was merely but for, fortuitous, and incidental to the plaintiff's use of the motor vehicle, and thus PIP benefits were not available. *Id*. The majority likens plaintiff's injury by a garage door to the incidental injuries in *Morosini* and *Mueller*, finding the reasoning from *Mueller* that, in that case, the "[p]laintiff was simply in the wrong place at the wrong time," particularly persuasive. *Id*. at 92.

I respectfully disagree with the majority's characterization of plaintiff's injury. Plaintiff was injured by a garage door while engaged in an activity closely related to the transportational function of his vehicle. This was not a stray bullet. In *Mueller*, we noted the "*extraordinary* risk

-3-

of stray gunfire striking a motor vehicle" when we concluded that the plaintiff's injuries were incidental to his operation of a motor vehicle. *Id*. at 92 n 2. We further wrote:

> Plaintiff could have been injured as easily if he were hiking, skiing, or hunting. The vehicle was not the instrumentality of the injury, *Thornton*, *supra*, p 660, nor was the injury caused by the inherent nature of the vehicle, *id*., p 661. Nor is the risk of a stray bullet passing through an automobile 'within the ordinary risks of driving a motor vehicle.' *Marzonie* [*v Auto Club Ins Ass'n*, 441 Mich 522, 534; 495 NW2d 788 (1992)]. [*Id*. at 91-92.]

Unlike stray bullets, garage doors are closely associated with the use and operation of motor vehicles, and I would think this to be particularly true with respect to the transportation of goods via box trucks. Indeed, plaintiff was not simply in the wrong place at the wrong time, he was standing on a *loading dock* guiding Ybarra, who was driving the box truck, *solely because* the two were engaged in transporting goods.

Similarly, I do not believe plaintiff's injury is comparable to the injury in *Morosini*, which was the result of an intentional tort. *Morosini*, 461 Mich at 305. The majority notes that plaintiff's "injury was the result of negligence on the part of the Walmart employee, not the use of the box truck as a motor vehicle." In actuality, however, it is quite typical in a no-fault case that a plaintiff's injury is in some way the result of negligence by a third party. Because the only proper inquiry is whether a plaintiff's injury was related to that plaintiff's use of a motor vehicle as a motor vehicle, negligence by a third party ordinarily does not keep plaintiffs from recovering PIP benefits. Moreover, in *Drake*, we permitted a plaintiff to recover PIP benefits under very similar circumstances despite a third party's involvement in causing the injury.

As described above, in *Drake*, the plaintiff was injured while attempting to unclog an auger system on a delivery truck. *Drake*, 270 Mich App at 24. Plaintiff was reaching his hand through an inspection door on the truck in order to clean animal feed from the augers when the driver of the delivery truck, "apparently unintentionally," activated the augers and caused plaintiff to lose a finger. *Id*. Despite the plaintiff's injuries being the result of the negligence of a third party, we concluded that the plaintiff was entitled to bring a claim for PIP benefits because the vehicle involved in the injury was a delivery truck and the plaintiff was using it as such when he was injured. *Id*. at 26. We took no issue with the delivery truck driver's involvement in causing the plaintiff's injury. See *id*. at 25-29.

More recently, in *Walega*, we held that the plaintiff was entitled to PIP benefits even though he was outside the motor vehicle and the motor vehicle was being operated by his wife. *Walega*, 312 Mich App at 271. We held that, even despite the fact that "the particular method used to transport the safe, i.e, dragging it, may not have been contemplated," there was a sufficient causal connection between the injury and the use of the vehicle because "the use of a truck to transport an item is a normal use." *Id*. See also *Thornton*, 425 Mich at 661 ("[T]he mere absence of foreseeability [does] not necessarily preclude coverage."). One could have argued in *Walega* that the plaintiff was simply in the wrong place at the wrong time, or that his injury was actually the result of his wife's heavy foot or negligence. Instead, those concepts had no bearing on our analysis. The *Walega* plaintiff was entitled to PIP benefits because his injury arose out of the use of a motor vehicle as a motor vehicle, and because it was foreseeable that a

-4-

person might "use a truck, fitted with a trailer hitch, to move heavy objects." *Walega*, 312 Mich App at 272.

On page five of the majority opinion, the majority appears to distinguish *Drake* and *Walega* by noting that, in this case, plaintiff was not injured by an item attached to or being transported by the box truck. Indeed, in *Drake*, the auger system was permanently mounted to the delivery truck, *Drake*, 270 Mich App at 390, and in *Walega*, conflicting testimony indicated that the safe was either attached or partially loaded onto the truck when it injured the plaintiff, *Walega*, 312 Mich App at 261. I would not conclude that those were the operative facts in those cases, and moreover, the majority's argument controverts other precedent set by this Court.

In *Musall v Golcheff*, 174 Mich App 700, 703; 436 NW2d 451 (1989),[1] we permitted the recovery of PIP benefits even where the plaintiff was injured by an object unattached to his vehicle. This Court held that the necessary causal relationship existed between the plaintiff's injury and the use of a motor vehicle when the plaintiff was injured by a malfunctioning wash wand at a self-serve auto wash. *Id*. The plaintiff suffered injury while in the process of maintaining his truck, and in this Court's view, "[t]he wash wand was merely the tool needed to accomplish the task." *Id*. Accordingly, the motor vehicle "was not merely 'incidental' to the circumstances" and "the relation between the functional character of the motor vehicle and [the] plaintiff's injuries was indeed direct." *Id*. It is notable that, in *Musall*, an assertion was made that the requisite causal connection between the plaintiff's injury and maintenance of the vehicle did not exist because the plaintiff's injury arose from contact with the wash wand rather than direct contact with the vehicle. *Id*. at 704. We explicitly rejected that idea, concluding that our caselaw did not support such a narrow interpretation of the statute. *Id*. at 704. Indeed, we have noted that, generally, the no-fault act "is to be construed liberally because it is remedial in nature." *Walega*, 312 Mich App at 266 (quotation marks and citation omitted). "Where appropriate, the act should be broadly construed to effectuate coverage." *Id*. (quotation marks and citation omitted).

With that in mind, I would have concluded that plaintiff established a causal relationship between his injury and his use of the box truck as a motor vehicle sufficient to overcome summary disposition. Plaintiff testified that he was in the process of directing Ybarra as Ybarra attempted to back the box truck into the loading bay. The garage door attached to the loading bay was an object that would necessarily need to be engaged in order to continue to utilize the box truck for its transportational purpose, and I would think the potential for injury from such an

---

[1] Court of Appeals cases decided before November 1, 1990, are not binding. MCR 7.215(J)(1). Although this Court is not " 'strictly required to follow uncontradicted opinions from this Court decided prior to November 1, 1990,' those opinions are nonetheless 'considered to be precedent and entitled to significantly greater deference than are unpublished cases.' " *People v Bensch*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 341585); slip op at 3 n 6, quoting *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (emphasis omitted).

object would be an ordinary risk associated with utilizing delivery box trucks as delivery trucks. I would have affirmed the trial court's order.


/s/ Karen M. Fort Hood