MOROSINI v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 186760. Submitted April 1, 1997, at Detroit. Decided June 6, 1997, at 9:05 A.M. Leave to appeal sought.

Kenneth Morosini brought an action in the 37th District Court against Citizens Insurance Company of America, seeking first-party, no-fault insurance benefits for injuries sustained when he was assaulted by the driver of an automobile that had struck the rear of his automobile, which was insured by the defendant. The assault occurred when the plaintiff was in the process of examining his automobile for damage. The court, Thomas E. Kennedy, J., entered a judgment for the plaintiff, finding that the injuries arose from the use of a motor vehicle as a motor vehicle because the assault occurred while the plaintiff was fulfilling his statutory obligation to inspect for damage and exchange information with the driver of the other vehicle following an automobile accident. The defendant appealed and the Macomb Circuit Court, George C. Steeh, J., affirmed. The defendant appealed by leave granted.

The Court of Appeals held:

Injuries arising from assaults are compensable under the no-fault act, MCL 500.3105(1); MSA 24.13105(1), only when the injuries arise out of a normal activity associated with the use of a vehicle as a motor vehicle. In this case, there was a sufficient causal nexus between the injuries sustained by the plaintiff in the assault and the use of the motor vehicle as a motor vehicle to hold the defendant insurer liable under § 3105(1). The plaintiff's injuries arose out of the use of his motor vehicle as a motor vehicle because his getting out of his vehicle, thus exposing himself to the risk of assault, to determine whether there was an accident resulting in damage was in compliance with his statutory obligations. The plaintiff's action was a normal activity associated with the use of a motor vehicle as a motor vehicle and was required by the Michigan Vehicle Code. Injuries sustained in an assault arising out of an activity normally associated with the use of a motor vehicle as a motor vehicle are presumed to be part of the normal risk of driving.

Affirmed.

INSURANCE — NO-FAULT — ASSAULTS

> The no-fault insurance act requires an insurer to pay first-party, no-fault benefits when an accidental bodily injury arises out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle; injuries that arise from assaults are compensable under the act only when they arise out of a normal activity associated with the use of a vehicle as a motor vehicle, e.g., an assault that occurs while the insured is in the course of fulfilling the insured's statutory obligations as an operator of a motor vehicle to inspect for damage and exchange information with the driver of the other vehicle following a motor vehicle accident (MCL 257.618, 257.619, 257.622, 500.3105[1]; MSA 9.2318, 9.2319, 9.2322, 24.13105[1]).

*Gregory T. Zalecki,* for the plaintiff.

*Schellhase, Disney, Auld & Johnston* (by *David C. Johnston*), for the defendant.

Before: HOLBROOK, JR., P.J., and FITZGERALD and SMOLENSKI, JJ.

FITZGERALD, J. Defendant appeals by leave granted the circuit court order affirming the district court judgment awarding plaintiff $2,500 in first-party, no-fault benefits after a trial on stipulated facts. We affirm.

I

The district court stated the stipulated facts as follows:

> On the date stated in the complaint, the Plaintiff was an operator of a motor vehicle on a public highway, I believe, leaving the Silverdome . . . , and he was struck from the rear by a motorist who was operating a motor vehicle.
>
> It was a minor impact, and the impact, per se, itself, caused no injury whatsoever to Mr. Kenneth Morosini. However, it was an impact which would give rise to the requirement to determine if property damage had occurred, and if property damage had occurred, it would be necessary,

under the rules of a—for vehicle operators, for the operators to exchange identification information, such as driver's license and insurance and registration information.

Mr. Morosini exited his vehicle, was in the process of examining the area where he believed a slight impact had occurred, and he was assaulted by the driver of the other vehicle resulting in injuries.

He has brought this action against Citizens Insurance Company, who [sic] is Mr. Morosini's own personal-injury protection carrier, for recoupment of medical expenses arising out of the treatment for the assault [and wage loss and replacement services].

\*     \*     \*

. . . The damages have been stipulated between the parties at $2500.

At issue was whether plaintiff's injury arose out of the ownership, operation, maintenance, or use of a motor vehicle under MCL 500.3105(1); MSA 24.13105(1). The district court ruled that plaintiff's injuries arose from the use of his motor vehicle because the assault occurred while he was fulfilling his obligations as an operator of a motor vehicle to exchange information with the other driver after an automobile accident. The district court stated:

It is the Court's belief that in the process of fulfilling his obligations as an operator of a motor vehicle, that he was assaulted And such an assault, frankly, is, I guess, not unforeseeable, certainly is not unforeseeable to this Court, and . . . it's just not an uncommon situation, at all, that people lose it at the scene of an accident; either the people causing the accident or the people whose vehicles were damaged who were innocent.

\*     \*     \*

> . . . I think that the operator of a motor vehicle here was required to place himself in this position . . . of potential danger in order to fulfill his obligations as an operator of a motor vehicle. And therefore, under the facts of this case, these injuries did arise out of the operation or use of a motor vehicle as a motor vehicle.

Subsequently, the district court entered a judgment in favor of plaintiff in the amount of $2,500.

On appeal, the circuit court agreed with the district court that assaults arising from automobile collisions, like the assault arising from the carjacking in *Bourne v Farmers Ins Exchange*, 203 Mich App 341; 512 NW2d 80 (1994), were within the ordinary risks of driving a motor vehicle. In its opinion and order, the circuit court observed:

> The Court is not convinced that the district court's ruling that the plaintiff-appellee's injuries resulted from his operation of a motor vehicle as a motor vehicle was clearly erroneous. The Court finds not only was this incident foreseeable, but that the plaintiff-appellee was using his motor vehicle in such a manner and that his injuries were a result of that use. The District Court further recognizes that these assaults are now within the ordinary risk of driving a motor vehicle.
>
> The factual setting for this claim is most closely aligned with the carjacking in *Bourne, supra.* As noted in the lower court, assaults arising from automobile collisions are now within the ordinary risks of driving. The risks are increased by the driver's duty to remain on the scene of an accident, inspect damage, and exchange information. As in *Bourne*, there is no claim of a pre-existing dispute and the nexus of plaintiff's injuries with the use of his motor vehicle is a direct, causal one. The accident precipitated the assault, and the assault occurred as an integral part of the continuum of the accident.

Thereafter, defendant moved for rehearing or reconsideration, arguing that the Supreme Court's partial reversal of this Court's decision in *Bourne* warranted reversal of the district court's judgment. *Bourne v Farmers Ins Exchange*, 449 Mich 193; 534 NW2d 491 (1995). After the circuit court denied the motion on the basis of its lack of appellate jurisdiction, this Court granted defendant's application for leave to appeal the circuit court's order.

II

MCL 500.3105(1); MSA 24.13105(1) provides that an insurer is required to pay first-party, no-fault benefits when an accidental bodily injury arises out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle. The no-fault act must be liberally construed in favor of those for whom benefit was intended, i.e., persons injured in motor vehicle accidents, and whether an injury arises out of the use of a motor vehicle must be determined case by case. *McKenney v Crum & Forster*, 218 Mich App 619, 623; 554 NW2d 600 (1996).

In *Thornton v Allstate Ins Co*, 425 Mich 643, 650-651; 391 NW2d 320 (1986), the Court adopted the causation standard set forth in *Kangas v Aetna Casualty & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975):

"[W]hile the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle."

See also *Marzonie v Auto Club Ins Ass'n*, 441 Mich 522; 495 NW2d 788 (1992); *Bourne*, 449 Mich 195-196, 198.

In determining whether the circuit court erred in affirming the district court's judgment, we begin by reviewing Michigan case law addressing whether injuries arising from assaults are compensable under the no-fault act. Injuries arising from assaults have been found to be compensable under the no-fault act only when the vehicle is itself part of the target of the assault, whether intentional or accidental, such that the injury suffered is identifiable with the use of a motor vehicle as a motor vehicle. See *Gajewski v Auto-Owners Ins Co*, 414 Mich 968; 326 NW2d 825 (1982) (an explosive device attached to ignition of motor vehicle detonated, causing serious injury to the car's occupant; the Supreme Court held that a direct causal relationship existed between the use of a motor vehicle and the plaintiff's injuries because turning the ignition key was reasonably identifiable with the normal use of the vehicle); *Saunders v DAIIE*, 123 Mich App 570; 332 NW2d 613 (1983) (passenger in moving car injured by projectile that flew in through open window); *Mann v DAIIE*, 111 Mich App 637; 314 NW2d 719 (1981) (stone dropped on the plaintiff's vehicle by unknown person from freeway overpass); *Kreighbaum v Automobile Club Ins Ass'n*, 170 Mich App 583; 428 NW2d 718 (1988) (the plaintiff driver accidentally shot by deer hunter after she slowed down on a rural road to avoid collision with a deer).

Generally, however, injuries arising from assaults have not been found to be compensable under the no-fault act, even though a motor vehicle may provide the situs or the occasion for the assault. See *O'Key v*

*State Farm Mutual Automobile Ins Co*, 89 Mich App 526; 280 NW2d 583 (1979) (the plaintiff shot by an unknown assailant while sitting in a stationary car with engine running); *Hamka v Automobile Club of Michigan*, 89 Mich App 644; 280 NW2d 512 (1979) (the plaintiff punched in the nose by pedestrian while sitting in his car at an intersection); *Shinabarger v Citizens Mutual Ins Co*, 90 Mich App 307; 282 NW2d 301 (1979) (the decedent was killed as he was entering an automobile when a companion's rifle accidentally discharged as it was being passed to another person sitting in the car); *DAIIE v Higginbotham*, 95 Mich App 213; 290 NW2d 414 (1980) (the plaintiff was shot in her car by estranged husband after an automobile chase in which her automobile was forced to the curb); *Ciaramitaro v State Farm Ins Co*, 107 Mich App 68; 308 NW2d 661 (1981) (the decedent was killed in an armed robbery while delivering produce from his truck); *A & G Associates, Inc v Michigan Mutual Ins Co*, 110 Mich App 293; 312 NW2d 235 (1981) (the plaintiff, a passenger in a taxicab, sustained injuries when she was assaulted and robbed by cab driver); *Shaw v Allstate Ins Co*, 141 Mich App 331; 367 NW2d 388 (1985) (the decedent was shot in his parked car).

Moreover, in *Thornton*, 425 Mich 660, the Court found that there was no coverage for the injuries that the plaintiff, a cab driver, suffered when he was shot by his passenger and then robbed because the connection between his injuries and the use of the cab were no more than incidental, fortuitous, or "but for." In denying coverage, the Court reasoned that the taxicab was "merely the situs of the armed robbery [such that] the injury could have occurred whether or not

Mr. Thornton used a motor vehicle as a motor vehicle." *Id.* In this fashion, the Court appeared to distinguish *Saunders* and *Mann* because the injuries in those cases occurred when each plaintiff was using a motor vehicle as a motor vehicle. In *Thornton*, the Court noted:

> While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle *as a taxicab*, the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous. The mere foreseeability of an injury as an incident to a given use of a motor vehicle is not enough to provide no-fault coverage where the injury itself does not result from the use of the motor vehicle as a motor vehicle. Likewise, the mere absence of foreseeability would not necessarily preclude coverage. [425 Mich 661 (emphasis in original).]

Similarly, in *Auto-Owners Ins Co v Rucker*, 188 Mich App 125; 469 NW2d 1 (1991), coverage was denied under the assailant's automobile policy when the decedent, who was standing in front of a house waiting for a ride, was killed as the result of a drive-by shooting. In *Rucker*, this Court noted:

> Although the vehicle made it easier for the criminals to approach the scene and to escape, its use was nonetheless incidental to the injury. One shudders to contemplate whether drive-by shootings have become foreseeable. It is, however, uncontestable [sic] that they are not identified with the normal use of a motor vehicle. [*Id.* at 127.]

Likewise, in *Kreager v State Farm Mutual Automobile Ins Co*, 197 Mich App 577; 496 NW2d 346 (1992), this Court denied coverage for injuries that the plaintiff suffered when he was shot by an occupant of a passing car while standing outside his car. In that

case, when one of the occupants of the car behind the plaintiff's car threw a bottle at the plaintiff's car, the plaintiff got out of his car, retrieved the bottle, and threw it at the car behind his. As the car passed the plaintiff, one of the occupants shot the plaintiff. On the basis of *Thornton*, this Court ruled that the injuries arising from the assault were not sufficiently related to the use of a motor vehicle as a motor vehicle.

More recently, in *Marzonie*, 441 Mich 522, the Supreme Court reversed this Court's award of personal injury protection benefits to a plaintiff who suffered gunshot injuries following an altercation with the occupants of another vehicle. When the driver of the other car reached his own house, he retrieved a shotgun, aimed it at the plaintiff's car, and fired, striking the plaintiff. The Court, quoting *Thornton*, 425 Mich 660, n 10, noted that "the focus is not on the intent of the assailant—instead, 'the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle.' " *Marzonie*, 441 Mich 534. The Court in *Marzonie* then observed:

> *Saunders* and *Mann* are unlike *Thornton*, in that the hazard experienced by those insureds was directly tied to their use of a motor vehicle as a motor vehicle. The relationship between that use and the hazard is the key to *Saunders* and *Mann*, not the subjective intent of the unidentified assailants. [*Id.*]

Using this test, the Court concluded that the automobile was merely incidental and fortuitous to the resulting injury and that unlike *Mann*, *Saunders*, and *Kreighbaum*, the plaintiff was not entitled to personal injury protection benefits because the shooting was

not within the ordinary risks of driving a motor vehicle.

After *Marzonie*, in *Mueller v Auto Club Ins Ass'n*, 203 Mich App 86; 512 NW2d 46 (1993), this Court denied coverage to a passenger of a car who was accidentally shot by a deer hunter on the ground that "[t]he vehicle was not the instrumentality of the injury, . . . nor was the injury caused by the inherent nature of the vehicle," and that "the risk of a stray bullet passing through an automobile [was not] 'within the ordinary risks of driving a motor vehicle.'" *Id.* at 91-92, quoting *Marzonie*, 441 Mich 534. In *Mueller*, the panel also concluded that *Kreighbaum*, *supra*, was wrongly decided because the injuries suffered by that plaintiff were not directly related to the use of a motor vehicle as a motor vehicle.

Coverage was also denied in *Century Mutual Ins Co v League General Ins Co*, 213 Mich App 114; 541 NW2d 272 (1995), because this Court concluded that the automobile was the mere situs of the injury when the plaintiff was injured when she leaned into an automobile and was bitten by a dog.

However, most recently in *Bourne*, 449 Mich 193, the Supreme Court reversed this Court's decision that the injuries sustained in a carjacking were compensable under the no-fault act. In that case, the plaintiff was about to enter his parked car when he noticed two unknown men in the back seat. The plaintiff was forced to drive his car at gunpoint to a remote location where he was assaulted after getting out of the car. The plaintiff sustained injuries and was also robbed of his car and wallet. This Court concluded:

> [T]here is a direct causal relationship between the use of a motor vehicle as a motor vehicle and injuries sustained

during a so-called carjacking. The physical assault only occurs because the assailants wish to take possession of the vehicle. Unfortunately, such incidents are nowadays within the ordinary risks of driving a motor vehicle. *Marzonie, supra* at 534. [203 Mich App 344.]

In reversing this Court's decision, the Supreme Court found in *Bourne*, 449 Mich 200, that there was not a sufficient causal connection between the plaintiff's injuries and the use of the motor vehicle as a motor vehicle to hold the defendant insurer liable under § 3105(1). Specifically, the Court concluded that the "plaintiff's vehicle was at best the situs of the injury, which is not a sufficient condition . . . ." In so holding, the Court expressly distinguished *Gajewski* where the plaintiff's injuries "*did* arise out of the use of his car because the turning on of a car's ignition is a normal activity associated with the use of a vehicle as a motor vehicle." 449 Mich 201 (emphasis in original). On the other hand, the "plaintiff's injuries, unlike the turning on of an ignition, were not required to use the vehicle." *Id.* Further, the Supreme Court in *Bourne*, after observing that this Court improperly focused on the intent of the assailant in order to create the causal connection between the assault and the use of the motor vehicle, rejected the proposition that the assault was related to the use of a motor vehicle as a motor vehicle on the basis of the fact that the assailants wished to take possession of the plaintiff's motor vehicle. However, in a footnote, the Court observed:

Although plaintiff cites *Saunders v DAIIE*, 123 Mich App 570; 332 NW2d 613 (1983), and *Mann v DAIIE*, 111 Mich App 637; 314 NW2d 719 (1981), for support, we are unpersuaded. We recognize that our citing of these cases in

*Thornton* has created some confusion, however, we do not agree that assaults are part of "the normal risk" of motoring. Nevertheless, we are prepared to examine cases employing this methodology if and when we are presented with a case that raises the issue squarely. [449 Mich 200, n 3.]

After *Bourne,* this Court in *Kennedy v Auto Club of Michigan,* 215 Mich App 264; 544 NW2d 750 (1996), held that a plaintiff was not entitled to coverage for an injury sustained while riding as a passenger in an automobile when hit by an undetermined projectile. In *Kennedy,* this Court concluded that the automobile was not the instrumentality of the injury, nor was the injury caused by the inherent nature of driving an automobile. Further, this Court observed that injuries resulting from projectiles shot or thrown through an automobile are not within the ordinary risks of driving a motor vehicle. In so holding, this Court stated:

We recognize that, in the past, this Court has held that no-fault coverage applies when the assailant who caused an injury targeted the vehicle, not the people inside the automobile. See *Saunders* [*supra*]; *Mann* [*supra*]. However, we reject the argument that *Bourne* and *Thornton* should be distinguished on the basis that the unknown assailant may have aimed the projectile at the vehicle instead of at the passengers inside the vehicle. First, although the Court in *Bourne* did not expressly overrule *Saunders* and *Mann,* the Supreme Court referred to both cases in stating that "we do not agree that [the involved] assaults are part of 'the normal risk' of motoring." *Bourne, supra* at 200, n 3. Second, the Supreme Court in *Bourne, supra* at 201-202, rejected the rationale applied in both *Saunders* and *Mann* when it concluded that

"it is improper to use the intent of the assailant in order to create the causal connection. 'We reject the focus that the Florida and Minnesota courts place upon the intent of the

assailant as providing the requisite nexus between the injury and the use of the motor vehicle.' *Thornton, supra* at 660, n 10. Further, ' "the proper focus is upon the relation between the injury and the use of a motor vehicle as a motor vehicle," ' not on ' "the intent of the assailant . . . ." ' *Marzonie, supra* at 532, quoting 425 Mich 660, n 10."

Accordingly, the intent of the unknown assailant is irrelevant. In regard to the no-fault coverage issue, it makes no difference whether the assailant was targeting the vehicle, plaintiff, something else, or nothing at all. The rationale of *Saunders* and *Mann* has been overruled. [215 Mich App 267-268.]

In the aftermath of *Bourne* and *Kennedy*, we are thus forced to conclude that injuries arising from assaults are compensable under the no-fault act only when the injuries sustained in an assault arise out of a "normal activity associated with the use of a vehicle as a motor vehicle." *Bourne*, 449 Mich 201. Although *Bourne* did not expressly overrule *Saunders* and *Mann*, the Supreme Court rejected the idea that "assaults are part of 'the normal risk' of motoring," indicating only that it was "prepared to examine cases employing this methodology if and when we are presented with a case that raises the issue squarely." 449 Mich 200, n 3. While this footnote in *Bourne* seemingly left open the possibility that no-fault coverage might be available for certain injuries sustained in assaults that do not arise out of an activity normally associated with the use of a vehicle as a motor vehicle, this Court in *Kennedy* concluded that the rationale for *Saunders* and *Mann* had been overruled by *Bourne*. Because *Kennedy* is controlling authority under Administrative Order No. 1994-4, 445 Mich xci, as continued in effect by Administrative Order No. 1996-4, 451 Mich xciii, we thus conclude that injuries

arising from assaults are compensable under the no-fault act only when arising out of a "normal activity associated with the use of a vehicle as a motor vehicle." *Bourne*, 449 Mich 201.

III

Applying the foregoing analysis to the present case, we conclude that there was a sufficient causal nexus between the injuries sustained by plaintiff in the assault and the use of the motor vehicle as a motor vehicle to hold defendant insurer liable under § 3105(1).

As the district court found, plaintiff's injuries were sustained in an assault that occurred in the course of fulfilling his statutory obligations as an operator of a motor vehicle. MCL 257.618; MSA 9.2318 of the Michigan Vehicle Code provides:

> The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident resulting only in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of such accident and shall remain thereat until he has fulfilled the requirements of section 619. . . . Any person failing to stop or comply with said requirements under such circumstances shall be guilty of a misdemeanor.

In addition, MCL 257.619; MSA 9.2319 provides:

> The driver of any vehicle who knows or who has reason to believe that he has been involved in an accident resulting in . . . damage to any vehicle which is driven or attended by any person shall give his name, address, and the registration number of the vehicle he is driving, also the name and address of the owner, and exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with . . . .

Further, MCL 257.622; MSA 9.2322 provides that if the total property damage in the accident exceeds $400, then a report of the accident must be made to "the nearest or most convenient police station, or to the nearest or most convenient police officer."

In this case, we believe that plaintiff's injuries were compensable under the no-fault act because the assault was intimately connected with the operation, maintenance, and use of a motor vehicle as a motor vehicle. Plaintiff's injuries arose out of the use of his motor vehicle as a motor vehicle because his getting out of his car—thus exposing himself to the risk of an assault—to determine whether there was an accident resulting in damage was in compliance with his statutory obligations. Similar to *Gajewski*, plaintiff's action should be considered to be a normal activity associated with the use of a motor vehicle as a motor vehicle. In both cases, the injuries arose out of the use of a motor vehicle as a motor vehicle because the respective actions of turning on the ignition to start the car and getting out of the car to inspect for damages resulting from an accident were required to use the vehicle. While turning on the ignition is required by the design of a motor vehicle, getting out of the car to inspect for damages resulting from an accident is required by the Michigan Vehicle Code. Therefore, we conclude that plaintiff's injuries sustained in the assault after he left his vehicle did arise out of the use of his vehicle because getting out of the vehicle to inspect for damages from an accident is a normal activity associated with the use of a vehicle as a motor vehicle. Because there was a sufficient causal nexus between the injuries sustained by plaintiff in the assault and the use of the motor vehicle as a

motor vehicle, defendant insurer is liable under § 3105(1).

While assaults are not ordinarily part of the "normal risk" of driving, we note that neither *Gajewski*, nor *Bourne* in approving *Gajewski*, considered whether the assault in *Gajewski* should be regarded to be within the ordinary risks of driving a motor vehicle. Thus, it would appear that injuries sustained in an assault arising out of an activity normally associated with the use of a vehicle as a motor vehicle are presumed to be part of the "normal risk" of driving. Further, although both lower courts in this case observed that the assault was foreseeable, we note that "the mere absence of foreseeability would not necessarily preclude coverage." *Thornton*, 425 Mich 661. Rather, what is critical for the purpose of determining whether plaintiff's injuries were compensable under the no-fault act is whether his injuries arose from an activity normally associated with the use of a vehicle as a motor vehicle.

In addition, we note that a finding that plaintiff's injuries are compensable under the no-fault act is supported by public policy. In this regard, a finding of coverage encourages compliance with the provisions of the Michigan Vehicle Code requiring a driver of a vehicle involved in an accident to stop the vehicle and exchange information with the driver of the other vehicle. To hold otherwise would give Michigan drivers involved in accidents a reason, not altogether unfounded, to ignore these provisions rather than subject themselves to the possibility of an assault. In our view, it is not unreasonable, as part of the broad public policy of the no-fault act, to require defendant no-fault insurer to pay for plaintiff's injuries in order

to achieve compliance with these statutory obligations, even though these obligations arise under the Michigan Vehicle Code and not the no-fault act itself. While it is true that the denial of coverage would not leave plaintiff without a legal remedy, because he could seek recompense for his injuries by filing a tort action against the assailant, we believe that defendant no-fault insurer should be required to pay because the injuries arose from an activity normally associated with the use of a motor vehicle as a motor vehicle.

Finally, although the circuit court relied upon this Court's decision in *Bourne* in affirming the district court's judgment, we nonetheless affirm because the circuit court reached the right result, albeit for the wrong reason. *Griffey v Prestige Stamping, Inc*, 189 Mich App 665, 669; 473 NW2d 790 (1991).

Affirmed.