MOROSINI v CITIZENS INSURANCE COMPANY OF AMERICA
(AFTER REMAND)

Docket No. 113447. Decided December 7, 1999. On application by the defendant for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgments below and remanded the case to the district court for further proceedings.

Kenneth Morosini brought an action in the 37th District Court against Citizens Insurance Company of America, his no-fault insurer. Mr. Morosini claimed that injuries received when he was assaulted by the driver of another car after a minor traffic accident obliged Citizens to pay first-party no-fault benefits. The court, Thomas Edward Kennedy, J., granted judgment for Mr. Morosini, finding a sufficient nexus between the injuries and the use of a motor vehicle as a motor vehicle. The Macomb Circuit Court, George C. Steeh, J., affirmed, saying that the accident precipitated the assault, and the assault occurred as an integral part of the continuum of the accident. The Court of Appeals, D. E. HOLBROOK JR., P.J., and FITZGERALD and SMOLENSKI, JJ., affirmed. 224 Mich App 70 (1997) (Docket No. 186760). The Supreme Court, in lieu of granting leave to appeal, remanded the case to the Court of Appeals for reconsideration in light of *McKenzie v ACIA*, 458 Mich 214 (1998). 458 Mich 867 (1998). On remand, the Court of Appeals again affirmed. 232 Mich App 259 (1998). Citizens seeks leave to appeal.

In an opinion per curiam, signed by Chief Justice WEAVER, and Justices TAYLOR, CORRIGAN, YOUNG, and MARKMAN, the Supreme Court *held*:

The facts of the present case are not within the coverage intended by the Legislature.

The assault itself was a separate occurrence not closely related to the transportational function of a motor vehicle. The plaintiff was not injured in a traffic accident, but by the other driver's rash and excessive response to the accident.

Justice CAVANAGH, concurring, stated that while coverage should be denied in this case, *McKenzie's* "transportational function" should not be relied on as a basis for the majority's conclusion. Although, unlike *McKenzie*, the motorists in this case were operating their vehicles as motor vehicles on a public highway, what is

required is an inquiry into the causal connection between the use of the vehicle as a vehicle, and the injury. Were the injuries inflicted on the plaintiff during the intentional assault injuries arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle? Assaults are not part of the normal risk of motoring. In this case, the connection to the use of vehicles as motor vehicles preceding the attack provides insufficient "but for" causation.

Reversed and remanded.

Justice KELLY, dissenting, stated that there was a sufficient causal nexus between the injuries sustained by the plaintiff in the assault and the use of the motor vehicle as a motor vehicle because the plaintiff's injuries were sustained in the course of fulfilling his statutory obligations as an operator of a motor vehicle involved in an accident to inspect for damage and exchange information with any other driver involved in the accident.

*Schellhase, Rekiel & Mitcham* (by *David C. Johnston*); *Gross, Nemeth & Silverman, P.L.C.*, of counsel (by *Steven G. Silverman*), for defendant-appellant.

Amicus Curiae:

*John A. Lydick* for Auto Club Insurance Association.

AFTER REMAND

PER CURIAM. After a minor traffic accident, the plaintiff was assaulted by the driver of the other car. The lower courts granted no-fault benefits to the plaintiff, but we reverse and remand the case to the district court for entry of a judgment in favor of the defendant.

I

This case arises from an incident that took place in January 1993. It was submitted to the district court

on stipulated facts, which the court summarized in this fashion:

> On the date stated in the complaint, the Plaintiff was an operator of a motor vehicle on a public highway, I believe, leaving the Silverdome or the Palace or something like that, and he was struck from the rear by a motorist who was operating a motor vehicle.
>
> It was a minor impact, and the impact, per se, itself, caused no injury whatsoever to Mr. Kenneth Morosini. However, it was an impact which would give rise to the requirement to determine if property damage had occurred, and if property damage had occurred, it would be necessary, under the rules of a—for vehicle operators, for the operators to exchange identification information, such as driver's license and insurance and registration information.
>
> Mr. Morosini exited his vehicle, was in the process of examining the area where he believed a slight impact had occurred, and he was assaulted by the driver of the other vehicle resulting in injuries.
>
> He has brought this action against Citizens Insurance Company, who is Mr. Morosini's own personal-injury protection carrier, for recoupment of medical expenses arising out of the treatment for the assault.

The parties further stipulated that Mr. Morosini's damages, if liability were found, would be $2,500.

The question before the district court was whether Mr. Morosini's insurer—Citizens Insurance Company of America—was obliged to pay first-party no-fault benefits.[1] More specifically, the question is whether the facts of this case give rise to liability under MCL 500.3105(1); MSA 24.13105(1), which reads:

---

[1] The statutory phrase is "personal protection insurance benefits"—also known as "first-party" or "PIP" benefits. *McKelvie v ACIA*, 459 Mich 42, 44, n 1; 586 NW2d 395 (1998).

Under personal protection insurance an insurer is liable
to pay benefits for accidental bodily injury arising out of
the ownership, operation, maintenance or use of a motor
vehicle as a motor vehicle, subject to the provisions of this
chapter.

The district court granted judgment to Mr.
Morosini, finding a sufficient nexus between the inju-
ries and the use of a motor vehicle as a motor vehi-
cle. The court reasoned that the traffic accident gave
rise to a statutory obligation to stop and exchange
information,[2] and that the assault occurred as Mr.
Morosini was "in the process of fulfilling his obliga-
tions as an operator of a motor vehicle . . . ."
Accordingly, the district court entered judgment in
favor of Mr. Morosini, in the amount of $2,500.

The circuit court affirmed, saying that "[t]he acci-
dent precipitated the assault, and the assault
occurred as an integral part of the continuum of the
accident."[3]

Citizens took a further appeal to the Court of
Appeals. However, the result was another affirmance.
224 Mich App 70; 568 NW2d 346 (1997).[4] The Court of
Appeals said that Mr. Morosini's "injuries arose out of
the use of his motor vehicle as a motor vehicle
because his getting out of his car—thus exposing
himself to the risk of an assault—to determine
whether there was an accident resulting in damage
was in compliance with his statutory obligations." 224
Mich App 84. The Court said that "what is critical for
the purpose of determining whether plaintiff's injuries

---

[2] MCL 257.618, 257.619; MSA 9.2318, 9.2319.

[3] The circuit court later denied rehearing.

[4] Reh den August 27, 1997 (Docket No. 186760).

were compensable under the no-fault act is whether his injuries arose from an activity normally associated with the use of a vehicle as a motor vehicle." 224 Mich App 85. The Court of Appeals then went on to explain why its conclusion "is supported by public policy." 224 Mich App 85.

Citizens applied to this Court for leave to appeal. In lieu of granting leave, we remanded the case to the Court of Appeals for reconsideration in light of *McKenzie v ACIA*, 458 Mich 214; 580 NW2d 424 (1998). 458 Mich 867 (1998).

On remand, the Court of Appeals issued a short opinion adhering to its earlier conclusion. 232 Mich App 259; 591 NW2d 63 (1998).

Once again, Citizens has applied to this Court for leave to appeal.[5]

II

As one readily can see from the first opinion of the Court of Appeals, 224 Mich App 70, there is a substantial body of case law concerning the meaning of the phrase "use of a motor vehicle as a motor vehicle." Among these decisions, several pertain specifically to situations in which a driver has been assaulted.

In *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986), this Court considered a suit brought by a Flint taxidriver who had been assaulted by a person who pretended to be a fare. As the driver pulled away from the curb, the passenger drew a pistol and shot the driver in the neck. The robbery net-

---

[5] We also have received from Auto Club Insurance Association a motion for leave to appear as amicus curiae. We grant the motion.

ted $15 in change, and left the driver paralyzed from the neck down. As this Court explained, however, the Legislature did not extend coverage to this situation: "The connection in this case between the debilitating injuries suffered by Mr. Thornton and the use of the taxicab as a motor vehicle is no more than incidental, fortuitous, or 'but for.' " 425 Mich 660. The cab "was not the instrumentality of the injuries," but "was merely the situs of the armed robbery—the injury could have occurred whether or not Mr. Thornton used a motor vehicle as a motor vehicle." 425 Mich 660.

*Marzonie v ACIA*, 441 Mich 522; 495 NW2d 788 (1992), likewise illustrates the decisions made by the Legislature in this realm. In *Marzonie*, a dispute erupted between the occupants of two vehicles. One driver drove home, followed by the other. In the moments after the second car arrived, the first driver emerged from his house with a shotgun. Later claiming that he had intended to shoot the second car, not its driver, the first driver discharged his shotgun. Again, the result was permanent and serious injury. The no-fault act did not cover this situation, either, since "[t]he involvement of the automobiles was incidental and fortuitous"—"the shooting arose out of a dispute between two individuals, one of whom happened to be occupying a vehicle at the moment of the shooting." 441 Mich 534.

*Bourne v Farmers Ins Exchange*, 449 Mich 193; 534 NW2d 491; 42 ALR5th 953 (1995), involved a claim brought by a man who entered his parked car, only to find two men in the back seat. They forced him at gunpoint to drive to a parking lot a mile away, where he was struck in the face and thrown to the ground.

His injuries included several facial fractures and a broken ankle. Building on *Thornton* and *Marzonie*, this Court found that "there was not a sufficient causal connection between plaintiff's injuries and the use of his motor vehicle as a motor vehicle to find liability on the part of defendant." 449 Mich 203.

Finally, there is *McKenzie*, which was decided after the Court of Appeals issued its first opinion in the present case. In *McKenzie*, two men were hospitalized after inhaling carbon monoxide fumes from a propane heater in a camper/trailer that was attached to the back of a pickup truck. Examining closely the syntax selected by the Legislature, this Court observed that "the phrase 'use of a motor vehicle as a motor vehicle' would appear to invite contrasts with situations in which a motor vehicle is not used as a motor vehicle."[6] 458 Mich 218. Noting that a motor vehicle can be used for other purposes, this Court explained that "when we are applying the statute, the phrase 'as a motor vehicle' invites us to determine if the vehicle is being used for transportational purposes." 458 Mich 219. Discussing *Thornton* and *Bourne*, and overruling an earlier decision involving a cement truck that was being unloaded,[7] this Court held that "whether an injury arises out of the use of a motor vehicle 'as a motor vehicle' under [MCL 500.3105(1); MSA 24.13105(1)] turns on whether the injury is closely related to the transportational function of motor vehicles." 458 Mich 225-226. Applying that test to the *McKenzie* facts, this Court again concluded that the Legislature excluded coverage.

---

[6] Some internal quotation marks have been deleted.

[7] *Bialochowski v Cross Concrete Pumping Co*, 428 Mich 219; 407 NW2d 355 (1987).

III

Each of these decisions is instructive, and each supports our conclusion that the Legislature crafted the no-fault statute in a manner that excludes the facts of the present case. From these decisions we learn:

- Coverage is not mandated by the fact that the injury occurred within a moving vehicle, or by the fact that the driver believed that the passenger entered the vehicle for the purpose of being transported. *Thornton.*
- The focus is on the relationship between the injury and the use of a motor vehicle as a motor vehicle, not on the intent of the assailant. *Marzonie.*
- Incidental involvement of a motor vehicle does not give rise to coverage under the language enacted by the Legislature, even if assaultive behavior occurred at more than one location, and the vehicle was used to transport the victim from one place to the other. *Bourne.*
- The statute authorizes coverage in the event of an assault only if it is "closely related to the transportational function of motor vehicles." *McKenzie.*

These cases can lead only to the conclusion that the facts of the present case are not within the coverage intended by the Legislature. In the mind of the second motorist, the assault may have been *motivated* by closely antecedent events that involved the use of a motor vehicle as a motor vehicle, but the

assault itself was a separate occurrence. The plaintiff was not injured in a traffic accident—he was injured by another person's rash and excessive response to these events. The assault in this case was not "closely related to the transportational function of motor vehicles." *McKenzie* at 226.[8]

For these reasons, we reverse the judgments of the Court of Appeals, the circuit court, and the district court, and we remand this case to the district court for entry of a judgment in favor of defendant Citizens Insurance Company. MCR 7.302(F)(1).

Weaver, C.J., and Taylor, Corrigan, Young, and Markman, JJ., concurred.

Cavanagh, J. (*concurring*). I agree with the decision to deny coverage in this case. However, I disagree with the majority's reliance on the *McKenzie v ACIA*, 458 Mich 214; 580 NW2d 424 (1998), "transportational function" as a basis for our conclusion.

The majority leads us through this Court's history of interpreting the relationship between MCL 500.3105(1); MSA 24.13105(1), and facts where a motorist has suffered an intentional physical assault. *Bourne v Farmers Ins Exchange*, 449 Mich 193; 534 NW2d 491; 42 ALR5th 953 (1995), *Marzonie v ACIA*, 441 Mich 522; 495 NW2d 788 (1992), and *Thornton v*

---

[8] We agree with the main point of Justice Cavanagh's separate opinion—injuries from an intentional personal assault on a driver of a motor vehicle (or in this case on one who had a few moments before been driving a motor vehicle) do not bear a sufficient causal relationship to the use of a motor vehicle to qualify for first-party no-fault benefits. However, we regard *McKenzie, supra,* as being applicable to the circumstances of this case because Mr. Morosini's injuries were not caused by a force "closely related to the transportational function of motor vehicles," *id.,* but rather by a physical attack on his person.

*Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986). I agree that we should examine these cases for guidance in determining whether the instant injury is compensable under the statute. However, the majority veers off course when it looks to *McKenzie*, where the plaintiffs were injured when propane gas fumes leaked into a camper/trailer where they were sleeping. In that case, the majority stated that coverage would not be afforded when vehicles were being used for functions other than transportation, and held that the camper/trailer was being used for "sleeping accommodations." 458 Mich 226. This use was too far removed from the transportational function to constitute use "as a motor vehicle" at the time of injury. Coverage was denied on that basis. *Id.*

Because the instant facts provide no dispute that the motorists were operating their vehicles as motor vehicles on a public highway, we need not look further into the "use" or "function" of the vehicles. This is not a case where, as the *McKenzie* majority notes, "a motor vehicle is [being] used for other purposes, e.g., as a housing facility of sorts, as an advertising display (such as at a car dealership), as a foundation for construction equipment, as a mobile public library, or perhaps even when a car is on display in a museum." 458 Mich 219. Instead, this case requires an inquiry into the causal connection between the use of the vehicle' as a vehicle, and the injury. We must determine whether the injuries inflicted on plaintiff during the intentional assault are injuries "arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." MCL 500.3105(1); MSA 24.13105(1).

Plaintiff and his attacker were operating motor vehicles on a public highway when the attacker struck plaintiff from the rear. No injury resulted from this collision. However, once plaintiff exited his vehicle in order to exchange insurance information and to examine the area where the impact occurred, he was assaulted and injured by the other motorist. Plaintiff's injury arose out of an intentional assault that occurred after the two motor vehicles were being used as motor vehicles. As in *Bourne,* where the plaintiff was attacked during a carjacking, this plaintiff suffered a personal physical attack. Generally, such an attack is not compensable. 449 Mich 198. This Court came to the same conclusion in *Thornton* where the taxicab driver was shot and robbed by a customer. This Court found:

> While the injuries were perhaps "foreseeably identifiable" with the occupational or commercial use of a motor vehicle as a taxicab, the relation of the gunshot wound to the functional use of a motor vehicle as a motor vehicle was at most merely "but for," incidental, and fortuitous. [425 Mich 661.]

In *Marzonie,* the plaintiff argued with another motorist and was later shot by that person while driving his car. This Court stated that the injuries did not arise out of the use of the motor vehicle as a motor vehicle:

> The involvement of the automobiles was incidental and fortuitous. Although Mr. Oaks says that the plaintiff's car was moving toward him at a "creep," the shooting arose out of a dispute between two individuals, one of whom happened to be occupying a vehicle at the moment of the shooting. [441 Mich 534.]

Finally, in *Bourne*, we held that carjacking injuries did not arise out of the use of the plaintiff's vehicle as a motor vehicle:

> The carjacker simply struck plaintiff. Hence, plaintiff's vehicle was at best the situs of the injury, which is not a sufficient condition to establish the requisite causal connection between the injury and the vehicle. [449 Mich 200.]

In the instant case, the Court of Appeals granted plaintiff recovery by holding that plaintiff's injuries arose from an activity normally associated with the use of a vehicle as a motor vehicle. 224 Mich App 70, 84-85; 568 NW2d 346 (1997). It reasoned that

> getting out of the vehicle to inspect for damages from an accident is a normal activity associated with the use of a vehicle as a motor vehicle. Because there was a sufficient causal nexus between the injuries sustained by plaintiff in the assault and the use of the motor vehicle as a motor vehicle, defendant insurer is liable under § 3105(1).

The Court of Appeals essentially reasoned that being assaulted while fulfilling statutory duties to exchange insurance information is a normal risk of driving. I disagree and continue to adhere to this Court's statement:

> [W]e do not agree that assaults are part of "the normal risk" of motoring. [*Bourne*, 449 Mich 200, n 3.]

In that same footnote, we recognized that there have been cases where objects were projected at, or dropped on, vehicles, which resulted in an injury. *Saunders v DAIIE*, 123 Mich App 570; 332 NW2d 613 (1983); *Mann v DAIIE*, 111 Mich App 637; 314 NW2d 719 (1981). We agreed to review such cases as an

exception to this general rule. However, in this case, we have an intentional physical attack on a person, not a vehicle.

Plaintiff's injuries arose out of the blows inflicted on him by another motorist. The connection to the use of vehicles as motor vehicles preceding the attack provides insufficient "but for" causation. I am unpersuaded that we should depart from the general rule when the causal connection between using the vehicles as motor vehicles is broken by a physical personal assault.

KELLY, J. I dissent from the majority opinion in this case on the basis of the reasoning set forth in the Court of Appeals opinions.