# STATE OF MICHIGAN

# COURT OF APPEALS

ARMADA OIL COMPANY LLC d/b/a AOG
TRUCKING,

        Plaintiff-Appellant,

v

BARRICK ENTERPRISES, INC.,

        Defendant-Appellee.

UNPUBLISHED
September 22, 2015

No. 321636
Oakland Circuit Court
LC No. 2013-134391-CK

Before: K. F. KELLY, P.J., and CAVANAGH and MURRAY JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendant's motion for summary disposition and dismissing its several claims premised on an alleged agreement between the parties. We affirm.

Plaintiff, AOG Trucking, is a motor fuel hauling company that has been co-managed by Allie Berry and Ali Jawad since October 1, 2009. Berry and Jawad were also the shareholders and corporate officers of a non-party entity called Armada Oil & Gas Company, which was a wholesale distributor of BP-branded gasoline. Defendant is a wholesale distributor of BP-branded gasoline also, and was a competitor of Armada Oil & Gas Company. On September 11, 2009, non-party Armada Oil & Gas Company assigned all of its product supply agreements to defendant. Thereafter, defendant sent a letter to Armada Oil & Gas Company's former customers advising them that defendant would be servicing their accounts and that it would "use Armada as a common carrier to deliver your fuel."

On October 17, 2009, plaintiff and defendant allegedly entered into the written agreement that gives rise to this lawsuit. Plaintiff claims that this written agreement was premised on a prior verbal agreement that was reached when the assignment was entered into by non-party Armada Oil & Gas Company and defendant. More particularly, plaintiff claims that defendant promised to use plaintiff as its exclusive fuel hauler for former customers of Armada Oil & Gas Company, and to split the resulting profits equally with plaintiff. The alleged written agreement states:

(1) Armada to haul product pursuant to contract

(2) AJ & Allie to provide all dealer contracts to Barrick on Monday 10-19-09

-1-

(3) On all transfer customers Barrick & AOG split profit 50-50 after costs

The parties agree that subsequent attempts to enter into a formal "Common Carrier Agreement" failed. But defendant used plaintiff as a fuel hauler on occasion between October 23, 2009 and May 2, 2010. Defendant claimed that it stopped doing so after it acquired 51 former customers of Armada Oil & Gas Company at the cost of $1.5 million—which was paid to Armada Oil & Gas Company—through the terms of a May 11, 2010 Global Settlement Agreement that was reached in four federal lawsuits involving Armada Oil & Gas Company. Plaintiff admits that it took no action to enforce the alleged October 17, 2009 agreement until May 2013, when it sent a "demand letter" to defendant regarding the breach of that agreement.

This case was filed on June 6, 2013. On September 5, 2013, plaintiff's second amended complaint was filed. In Count I, plaintiff alleged breach of contract with regard to the October 17, 2009 "agreement." In Count II, plaintiff alleged a breach of contract claim as a third-party beneficiary of the October 17, 2009 "agreement." In Count III, plaintiff alleged fraud and intentional misrepresentation, claiming that defendant falsely represented that it would use plaintiff as its fuel hauler and split the profits with plaintiff. In Count IV, plaintiff alleged promissory estoppel, claiming that (1) it entered into the October 17, 2009 agreement with defendant, (2) defendant promised to use plaintiff to haul all of the fuel to Armada Oil & Gas Company's former customers and to pay plaintiff fifty percent of the profit, but (3) defendant failed to perform as promised. In Count V, plaintiff alleged unjust enrichment, claiming that (1) plaintiff entered into the October 17, 2009 agreement with defendant, (2) defendant promised to use plaintiff to haul all of the fuel to Armada Oil & Gas Company's former customers and to pay plaintiff fifty percent of the profit, but (3) plaintiff was not used to haul fuel and defendant kept all of the profit for itself. In Counts VI and VII, plaintiff alleged statutory and common-law conversion, claiming that defendant did not use plaintiff to haul fuel as promised and kept the profit for itself. In Count VIII, plaintiff asserted a claim for specific performance, requesting that defendant be ordered to use plaintiff for hauling duties as specified in the October 17, 2009 agreement. And in Count IX plaintiff sought an accounting premised on defendant's use of a third-party fuel hauler instead of plaintiff to service Armada Oil & Gas Company's former customers.

Eventually, defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). In brief, defendant argued that the alleged October 17, 2009 agreement relied upon by plaintiff for most of its claims was unenforceable for several reasons, including that there was no meeting of the minds. The alleged agreement was missing several essential terms such as duration, exclusivity, and manner of termination. And, by review of the express terms, defendant clearly did not agree to use plaintiff as its exclusive fuel hauler for an indefinite term which could not be terminated at will. If anything, defendant argued, the alleged October agreement was merely a letter of intent to enter into a formal contract at a later date as demonstrated by the parties' conduct. For example, defendant argued, an October 26, 2009 email by plaintiff's counsel, Mr. Swatosh, confirms that he was specifically instructed by plaintiff "to table the discussion regarding a contract between Barrick and AOG." The email further indicated that plaintiff was "hopeful" that defendant would use it on an as-needed basis as its fuel hauler in the future and that the matter would be revisited at a later time. And it was undisputed that plaintiff was used by defendant on an as-needed basis to haul fuel, for which plaintiff billed defendant two cents per gallon hauled. Further, defendant argued, all of

-2-

plaintiff's claims should be dismissed either because they relied on the alleged invalid agreement, were barred, or were unsupported by evidence.

Subsequently, the trial court agreed with defendant that the alleged October 17, 2009 agreement was not enforceable because it lacked "many material and necessary terms to form a meeting of the minds." Further, the terms that were present were unclear. The court concluded that the alleged "agreement is so lacking that the trier of fact could do nothing more than guess at the intent of the parties." At best, the court held, the agreement was a letter of intent to later enter into a formal agreement. Accordingly, the trial court dismissed plaintiff's breach of contract claim. And because the alleged October 17, 2009 agreement was not enforceable, Counts II (third-party beneficiary), IV (promissory estoppel), V (unjust enrichment), VIII (specific performance), and IX (accounting) were also dismissed. Plaintiff's conversion claims, Counts VI and VII, were dismissed as time-barred or, in the alternative, because plaintiff failed to allege that defendant was obligated to return specific money entrusted to it. Count III, the fraud claim, was dismissed because plaintiff failed to establish that a genuine issue of material fact existed on the issue whether defendant made a promise with no intent to perform. Accordingly, the trial court granted defendant's motion for summary disposition and dismissed plaintiff's complaint in its entirety. This appeal followed.

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). Similarly, "[t]he construction and interpretation of a contract present questions of law that we review de novo." *Saint Clair Medical, PC v Borgiel*, 270 Mich App 260, 264; 715 NW2d 914 (2006). A motion brought under MCR 2.116(C)(10) tests the factual support for the claim and should be granted only if, considering the pleadings and documentary evidence submitted by the parties in the light most favorable to the nonmoving party, no genuine issue of any material fact exists to warrant a trial. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999); *Spiek*, 456 Mich at 337. A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and should be granted only if, after accepting as true all well-pleaded factual allegations, the claims are unenforceable as a matter of law such that no factual development could justify recovery. *Maiden*, 461 Mich at 119 (citation omitted). And with regard to a motion brought under MCR 2.116(C)(7), the trial court must accept as true the contents of the complaint unless contradicted by documentary evidence, in determining whether the claim is barred by law. *Id*. at 118-119.

Plaintiff first argues that its breach of contract claim was erroneously dismissed. We disagree. "The essential elements of a valid contract are the following: '(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation.'" *Hess v Cannon Twp*, 265 Mich App 582, 592; 696 NW2d 742 (2005) (citation omitted). "Mutuality of agreement" means that there must be "a meeting of the minds on all essential terms of a contract." *Burkhardt v Bailey*, 260 Mich App 636, 655; 680 NW2d 453 (2004). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Calhoun Co v Blue Cross Blue Shield Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (citations omitted). "[M]utuality of obligation means that both parties to an agreement are bound or neither is bound." *Domas v Rossi*, 52 Mich App 311, 315; 217 NW2d 75 (1974). That is, there

is no mutuality of obligation where one party is obligated to perform, but not the other party. *Jaye v Tobin*, 42 Mich App 756, 760; 202 NW2d 712 (1972).

The alleged agreement giving rise to plaintiff's breach of contract claim provides:

(1) Armada to haul product pursuant to contract

(2) AJ & Allie to provide all dealer contracts to Barrick on Monday 10-19-09

(3) On all transfer customers Barrick & AOG split profit 50-50 after costs

Plaintiff argues that, by these terms, defendant promised (1) to use plaintiff as its exclusive fuel hauler for former customers of Armada Oil & Gas Company, and (2) to split the resulting profits equally with plaintiff. We agree with the trial court that the alleged agreement giving rise to plaintiff's breach of contract claim was not a valid contract. The trial court concluded that the alleged agreement failed because it lacked material and necessary terms to form a meeting of the minds. While we tend to agree with the trial court that the alleged agreement is confusing, indefinite, and incomplete, we conclude that it primarily fails because it lacked consideration and mutuality of obligation, i.e., plaintiff was not obligated or bound by its alleged terms.

The alleged agreement is unenforceable even if we accepted plaintiff's claims for the sake of argument that (1) the reference to "Armada" in the first provision is to "AOG" and not to non-party Armada Oil & Gas Company, (2) the "contracts" referred to in provisions one and two are the product supply contracts that were the subject of the assignment agreement between non-party Armada Oil & Gas Company and defendant, and (3) the "transfer customers" referred to in provision three were the former customers of non-party Armada Oil & Gas Company whose contracts were assigned to defendant. There is no provision in this alleged agreement where plaintiff, AOG Trucking, promised anything in exchange for defendant's purported promises to use plaintiff to haul fuel and to split the profits with plaintiff; there was no "bargained-for exchange between the parties." *Calhoun Co*, 297 Mich App at 13-14. "An essential element of a contract is legal consideration." *Yerkovich v AAA*, 461 Mich 732, 740; 610 NW2d 542 (2000). And the essence of consideration "is legal detriment that has been bargained for and exchanged for the promise." *Higgins v Monroe Evening News*, 404 Mich 1, 20; 272 NW2d 537 (1978). It is clear that this alleged agreement was not supported by any consideration. Plaintiff incurred no obligation or legal detriment that was bargained for and exchanged for defendant's alleged promises. Likewise, there was no mutuality of obligation—only defendant was allegedly bound to perform. Because plaintiff made no legally enforceable promise to defendant, defendant would have no cause of action for breach of contract against plaintiff. Accordingly, the alleged agreement between plaintiff and defendant was unenforceable; thus, the trial court properly dismissed plaintiff's breach of contract claim albeit for a different reason. See *Morosini v Citizens Ins Co of America*, 224 Mich App 70, 86; 568 NW2d 346 (1997).

Next, plaintiff argues that its third-party beneficiary breach of contract claim was improperly dismissed. We disagree. In its second amended complaint, plaintiff alleged in the alternative that it was a third-party beneficiary of the October 17, 2009 agreement between non-party Armada Oil & Gas Company and defendant. As plaintiff acknowledges, to create a third-party beneficiary there must be a valid contract and the "contract must expressly contain a

promise to act to benefit the third party." *White v Taylor Distrib Co, Inc*, 289 Mich App 731, 734; 798 NW2d 354 (2010) (citation omitted). In this case, the alleged agreement is not a valid contract between Armada Oil & Gas Company and defendant because, again, there was no "bargained-for exchange between the parties." *Calhoun Co*, 297 Mich App at 13-14. Even if defendant allegedly promised to use Armada Oil & Gas Company to haul fuel, Armada Oil & Gas Company made no enforceable promise to defendant.[1] Further, the alleged agreement contains no express promise to act to benefit plaintiff. Thus, Count II of plaintiff's second amended complaint was properly dismissed albeit for a different reason. See *Morosini*, 224 Mich App at 86.

Next, plaintiff argues that the trial court erroneously dismissed its fraudulent misrepresentation claim because defendant promised to use plaintiff as its exclusive fuel hauler and to split the profits with plaintiff, but defendant did not intend to do so. We disagree. Plaintiff acknowledges that future promises are contractual in nature and cannot constitute actionable fraud, but argues that the bad-faith exception applies because the promises were made without intent to perform. See *Hi-Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336-338; 247 NW2d 813 (1976). As plaintiff quotes in its brief on appeal: "[A]n unfulfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform." *Foreman v Foreman*, 266 Mich App 132, 143; 701 NW2d 167 (2005). Evidence of such fraudulent intent "must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.'" *Hi-Way Motor Co*, 398 Mich at 338-339, quoting *Danto v Charles C Robbins, Inc*, 250 Mich 419, 425; 230 NW 188 (1930).

In support of its fraud claim, plaintiff offered the deposition testimony of its former attorney, Charles Roehl. But Roehl did not testify that defendant promised to use plaintiff as its "exclusive" fuel hauler; none of the page references cited to by plaintiff support this claim. Roehl did testify that defendant agreed to "split the profit on the gasoline and the freight cost would come off of that," but offered no testimony in support of plaintiff's claim of bad-faith. Fraud is not to be lightly presumed, but must be proved by clear and convincing evidence. *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008) (citations omitted). In this case, even considering the proffered evidence in the light most favorable to plaintiff, it is insufficient to establish that a genuine issue of material fact exists on the issue whether defendant made the alleged promises to plaintiff with "a present undisclosed intent not to perform." *Foreman*, 266 Mich App at 143. Accordingly, the trial court properly dismissed Count III of plaintiff's second amended complaint.

Next, plaintiff argues that its promissory estoppel claim was erroneously dismissed because, as set forth in the alleged agreement, defendant "made a clear and definite promise as to

---

[1] Even if plaintiff argued that the reference to "AJ & Allie" in provision two of the alleged agreement referred to Armada Oil & Gas Company that argument would fail because it had a preexisting legal duty to provide those "dealer contracts" to defendant as a consequence of their assignment agreement. See *Yerkovich*, 461 Mich at 740-741.

exclusive hauling rights and an equal sharing of profits." We disagree. As plaintiff admits, "the sine qua non of the theory of promissory estoppel is that the promise be clear and definite . . . ." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004), quoting *State Bank of Standish v Curry*, 442 Mich 76, 84-85; 500 NW2d 104 (1993). And here, as the trial court noted, the alleged agreement did not set forth clear and definite promises made by defendant to plaintiff, AOG Trucking. For example, and contrary to plaintiff's claims, the alleged agreement contained no terms regarding exclusivity, duration, or method of termination. Further, the elements of promissory estoppel are

> (1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of promisee, (3) which in fact produced reliance or forbearance of that nature, and (4) in circumstances such that the promise must be enforced if injustice is to be avoided. [*Ardt v Titan Ins Co*, 233 Mich App 685, 692; 593 NW2d 215 (1999) (citation omitted).]

Even if a promise was made by defendant to plaintiff, plaintiff failed to present any evidence in support of the three other elements of promissory estoppel. Accordingly, Count IV of plaintiff's second amended complaint was properly dismissed.

Next, plaintiff argues that the trial court erred in dismissing its unjust enrichment claim after concluding that a contract did not exist between the parties. We disagree. To establish an unjust enrichment claim, the plaintiff must show that the defendant received a benefit from the plaintiff, and inequity resulted from the defendant's retention of that benefit. *Karaus v Bank of New York Mellon*, 300 Mich App 9, 23; 831 NW2d 897 (2012). In this case, defendant received no benefit from plaintiff that resulted in an inequity. As plaintiff argues, it was undisputed that defendant "was assigned the Transferred Customer contracts, [and] upon receiving those contracts, [defendant's] business increased more than 25%." But the "Transferred Customer contracts" were held in the name of non-party Armada Oil & Gas Company, not plaintiff. And Armada Oil & Gas Company entered into an assignment agreement with defendant with regard to those "Customer contracts." Thus, the claimed benefit that defendant received, and retained, was from non-party Armada Oil & Gas Company through their assignment agreement. Accordingly, Count V of plaintiff's second amended complaint was properly dismissed, albeit for a different reason. See *Morosini*, 224 Mich App at 86.

Next, plaintiff argues that its claims of statutory and common-law conversion were improperly dismissed. We disagree. As plaintiff quotes: "Conversion, both at common law and under the statute, is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Aroma Wines & Equip, Inc v Columbia Distribution Servs, Inc*, 303 Mich App 441, 447; 844 NW2d 727 (2013), quoting *Lawsuit Fin, LLC v Curry*, 261 Mich App 579, 591; 683 NW2d 233 (2004). Plaintiff's conversion claims are premised on defendant retaining all of the profits it made from hauling fuel to former customers of non-party Armada Oil & Gas Company in violation of the alleged October 17, 2009 agreement. However, because that agreement is invalid, as discussed above, plaintiff was not entitled to such profits. And, thus, defendant's retention of such profits did not

constitute an act of domain wrongfully exerted over plaintiff's personal property[2] inconsistent with plaintiff's rights; plaintiff had no right to such profits. Thus, Counts V and VI of plaintiff's second amended complaint were properly dismissed, albeit for a different reason. See *Morosini*, 224 Mich App at 86.

In conclusion the trial court properly granted defendant's motion for summary disposition and dismissed plaintiff's second amended complaint in its entirety.

Affirmed. Defendant is entitled to costs as the prevailing party pursuant to MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Christopher M. Murray

---

[2] We will assume for the sake of argument only that plaintiff is alleging conversion of specific money entrusted to defendant's care that defendant was obligated to return but failed to do so. See *Lawsuit Fin, LLC*, 261 Mich App at 591 (citation omitted).