*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SANDRA GUNTZVILLER,

      Plaintiff-Appellant,

v

CITY OF DETROIT,

      Defendant-Appellee.

UNPUBLISHED
February 5, 2019

No. 338982
Wayne Circuit Court
LC No. 17-001950-NO

Before: K. F. KELLY, P.J., and RIORDAN and GADOLA, JJ.

PER CURIAM.

Plaintiff, Sandra Guntzviller, appeals as of right the order of the trial court granting summary disposition in favor of defendant, City of Detroit, of plaintiff's claim for personal protection insurance (PIP) benefits under Michigan's no-fault act, MCL 500.3101 *et seq*. We affirm.

## I. FACTS

This case arises from plaintiff's claim that she was injured on May 12, 2011, after Andre George, one of defendant's bus drivers, removed her from one of defendant's buses. The parties agree that on that day George was operating one of defendant's buses. As he approached the bus stop where plaintiff was waiting, George apparently recognized her as a person who previously had harassed other passengers on the bus. George stopped the bus at the bus stop and allowed a passenger to board, but attempted to close the bus doors to prevent plaintiff from entering the bus. Plaintiff, however, forced open the doors and entered the bus. When George informed her that she was not allowed on the bus, plaintiff sprayed George and another passenger with pepper spray. George physically removed plaintiff from the bus, then drove the bus a short distance to seek medical treatment for himself and the passenger who had been assaulted by plaintiff. The parties do not dispute that the bus was parked when George removed plaintiff from the bus. Plaintiff was treated at a hospital from May 13 to May 16, 2011, and was diagnosed with rib fractures and a collapsed lung, which she alleged she received as a result of being assaulted by George.

Plaintiff initiated an action in the trial court, seeking PIP benefits under the no-fault act. Defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10), arguing that plaintiff had not established entitlement to benefits under the act. The trial court granted defendant's motion, dismissing plaintiff's complaint. Plaintiff now appeals.

## II. DISCUSSION

Plaintiff contends that the trial court erred in granting defendant summary disposition, and argues that the trial court incorrectly determined that her injuries were not "closely related to the transportational function" of defendant's bus. We disagree.

We review de novo the trial court's decision to grant or deny summary disposition. *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5-6; 890 NW2d 344 (2016). In so doing, we review the entire record to determine whether the moving party was entitled to summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Issues of statutory construction are also reviewed de novo. *Madugula v Taub*, 496 Mich 685, 695; 853 NW2d 75 (2014).

In this case, defendant moved for summary disposition under MCR 2.116(C)(7), (8), and (10). Although the trial court did not specify under which section it granted defendant's motion for summary disposition, "[w]here the parties rely on documentary evidence in support of their arguments, appellate courts proceed under the standards of review applicable to a motion made under MCR 2.116(C)(10)." *In re Miltenberger Estate*, 275 Mich App 47, 50; 737 NW2d 513 (2007). We therefore consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. When a motion is made and supported under MCR 2.116(C)(10), the burden shifts to the nonmoving party to show, by affidavits or other documentary evidence, that there is a genuine issue of material fact. MCR 2.116(G)(4); *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the nonmoving party does not make such a showing, summary disposition is properly granted. *Id*. at 363.

The purpose of Michigan's no-fault act is "to ensure the compensation of persons injured in automobile accidents." *Allstate Ins Co v State Farm Mut Auto Ins Co*, 321 Mich App 543, 552; 909 NW2d 495 (2017) (citation omitted). The act requires no-fault automobile insurers to provide PIP benefits for certain injuries related to a motor vehicle. *Kemp v Farm Bureau Gen Ins Co of Mich*, 500 Mich 245, 252; 901 NW2d 534 (2017). In that regard, MCL 500.3105(1) provides the initial scope of coverage for PIP benefits, stating that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter." *Kemp*, 500 Mich at 252.

A no-fault insurer, however, generally is not obligated to pay first-party PIP benefits for injuries involving a parked vehicle, because such injuries usually do not involve use of the vehicle as a motor vehicle. See *Stewart v Michigan*, 471 Mich 692, 698; 692 NW2d 376 (2004). When the injury alleged involves a parked motor vehicle, coverage generally is excluded unless

-2-

the plaintiff demonstrates that one of the three statutory exceptions of MCL 500.3106(1) applies. *Kemp*, 500 Mich at 252. That section provides:

> (1) Accidental bodily injury does not arise out of the ownership, operation, maintenance, or use of a parked vehicle as a motor vehicle unless any of the following occur:
>
> > (a) The vehicle was parked in such a way as to cause unreasonable risk of the bodily injury which occurred.
> >
> > (b) . . . [T]he injury was a direct result of physical contact with equipment permanently mounted on the vehicle, while the equipment was being operated or used, or property being lifted onto or lowered from the vehicle in the loading or unloading process.
> >
> > (c) . . . [T]he injury was sustained by a person while occupying, entering into, or alighting from the vehicle. [MCL 500.3106(1).]

In *Stewart*, our Supreme Court further explained the public policy underlying the parked vehicle exclusion:

> Injuries involving parked vehicles do not normally involve the vehicle *as a motor vehicle*. Injuries involving parked vehicles typically involve the vehicle in much the same way as any other stationary object (such as a tree, sign post or boulder) would be involved. There is nothing about a parked vehicle *as a motor vehicle* that would bear on the accident.
>
> The stated exceptions to the parking exclusion clarify and reinforce this construction of the exclusion. Each exception pertains to injuries related to the character of a parked vehicle as a motor vehicle – characteristics which make it unlike other stationary roadside objects that can be involved in vehicle accidents. [*Stewart*, 471 Mich at 698, quoting *Miller v Auto-Owners Ins Co*, 411 Mich 633, 639-641; 309 NW2d 544 (1981), abrogation regarding the exception in MCL 500.3106(1)(b) recognized by *Lefevers v State Farm Mut Auto Ins Co*, 493 Mich 960; 828 NW2d 678 (2013).]

Our Supreme Court has provided a three-step analysis to determine coverage of injuries related to parked motor vehicles:

> First, the claimant must demonstrate that his or her "conduct fits one of the three exceptions of subsection 3106(1)." Second, the claimant must show that "the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle *as a motor vehicle*[.] Finally, the claimant must demonstrate that the "injury had a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for." [*Kemp*, 500 Mich at 253 (citations omitted).]

## A. MCL 500.3106(1)(c)

Addressing the first factor, plaintiff in this case contends that her injuries were incurred while "alighting from" the parked bus, and that her conduct therefore falls within MCL 500.3106(1)(c). In *Frazier v Allstate Ins Co*, 490 Mich 381, 385-386; 808 NW2d 450 (2011), our Supreme Court defined "alighting" as used in MCL 500.3106(1)(c), stating:

> With respect to MCL 500.3106(1)(c), "alight" means "to dismount from a horse, descend from a vehicle, etc." or "to settle or stay after descending; come to rest." *Random House Webster's College Dictionary* (1997). See also *New Shorter Oxford English Dictionary* (defining "alight" as "to descend and settle; come to earth from the air"). Moreover, that the injury must be sustained "while" alighting indicates that "alighting" does not occur in a single movement but occurs as the result of a process. The process begins when a person initiates the descent from a vehicle and is completed when an individual has effectively "descend[ed] from a vehicle" and has "come to rest"—when one has successfully transferred full control of one's movement from reliance upon the vehicle to one's body. This is typically accomplished when "both feet are planted firmly on the ground." [Some citations omitted.]

In this case, although the record is not entirely clear, a review of the record indicates that George physically removed plaintiff from the bus after plaintiff sprayed him with pepper spray, resulting in plaintiff being deposited somewhere outside the bus. Although plaintiff asserted below that George pushed her off the bus, plaintiff's version of events given during her medical evaluations was that the bus driver carried her out of the bus, then threw her into either a cement planter or against a wall. Accepting either scenario, it appears that plaintiff incurred her injuries after being ejected from the bus, and when she was no longer relying on the bus to support her body. See *Frazier*, 490 Mich at 385-386. We note, however, that the trial court did not resolve the motion for summary disposition based upon this factor, but rather based upon the second factor of the analysis discussed below.

## B. PARKED MOTOR VEHICLE AS A MOTOR VEHICLE

The next factor in the analysis is whether plaintiff established that "the injury arose out of the ownership, operation, maintenance, or use of the parked motor vehicle as a motor vehicle." *Kemp*, 500 Mich at 253. The trial court concluded that plaintiff had failed to establish this factor because her alleged injuries were not closely related to the "transportational function" of the bus. We agree.

Whether an injury arises out of the use of a motor vehicle as a motor vehicle depends upon whether the injury "is closely related to the transportational function of automobiles." *McKenzie v Auto Club Ins Ass'n*, 458 Mich 214, 215; 580 NW2d 424 (1998). Our Supreme Court has determined that the answer to this question requires examination of the activity in which a plaintiff was engaged at the time of the injury. *Kemp*, 500 Mich at 258. "There is no requirement that the activity at issue 'result from' the vehicle's transportational function – that requirement would confuse the transportational function and causation inquiries." *Id*. at 260-261. In addition, the type of movements made or the injuries suffered need not be unique to

motor vehicles. *Id*. Instead, "the question at this stage is simply whether the activity plaintiff was engaged in at the time of the injury was closely related to the vehicle's transportational function." *Id*.

Incidental involvement of a motor vehicle does not give rise to coverage under the no fault act. *Morosini v Citizens Ins Co of America*, 461 Mich 303, 310; 602 NW2d 828 (1999). In *Morosini*, after a minor traffic accident, the plaintiff was injured by the assaultive behavior of the driver of the other car. Our Supreme Court held that the assault was not "closely related to the transportational function of motor vehicles," and therefore did not fall within the coverage intended by the Legislature. The Court reasoned that even though the actions of the second motorist in assaulting the plaintiff "may have been *motivated* by closely antecedent events that involved the use of the motor vehicle as a motor vehicle, . . . the assault itself was a separate occurrence. The plaintiff was not injured in a traffic accident – he was injured by another person's rash and excessive response to these events." *Morosini*, 461 Mich at 310-311.

In this case, at the time of her alleged injuries, plaintiff was engaged in the ramifications of her spraying pepper spray on the bus driver and another bus passenger. The encounter between plaintiff and George began when she attempted to board the bus, arguably an activity related to the transportational function of the bus. But plaintiff's injuries arose from George's assault. Even though the assault may have been "motivated by closely antecedent events that involved the use of the motor vehicle as a motor vehicle," the assault in this case, as in *Morosini*, was a separate occurrence. Plaintiff was not injured by her attempt to board the bus; she was injured by "another person's rash and excessive response to these events."[1] See *Morosini*, 461 Mich at 310-311. It also cannot be said that plaintiff was injured as a result of "alighting" from the bus, as that term is defined in *Frazier, supra*, when George either carried or threw her off the bus in response to the pepper spray attack. The trial court therefore correctly concluded that plaintiff failed to establish that her alleged injuries were closely related to the "transportational function" of the bus.

## C. CAUSAL CONNECTION

The final factor of the analysis requires plaintiff to demonstrate that her injuries had "a causal relationship to the parked motor vehicle that is more than incidental, fortuitous, or but for." See *Kemp*, 500 Mich at 253. "[W]here a motor vehicle is merely the location of an assault or a backdrop of an assault, there is insufficient connection between the injuries and the use of a motor vehicle as a motor vehicle to impose liability for PIP benefits under MCL 500.3105(1)." *Univ Rehab Alliance, Inc v Farm Bureau Gen Ins Co of Mich*, 279 Mich App 691, 696; 760 NW2d 574 (2008), overruled in part on other grounds by *Pirgu v United Serv Auto Ass'n*, 499 Mich 269 (2016).

Here, plaintiff was injured after she pepper sprayed George and a bus passenger, inspiring George to physically retaliate. Although her encounter with George began in the

---

[1] We do not here decide whether George's actions were, in fact, rash and excessive under the facts of this case.

entrance to the bus, one can safely speculate that plaintiff would have incurred similar injuries upon pepper spraying George, or perhaps anyone, in virtually any location. The fact that the events triggering this exchange began in the parked bus and concluded near the parked bus was, without question, merely "incidental, fortuitous, or 'but for.' " So, although the bus was the backdrop of the assault, the connection in this case between plaintiff's alleged injuries and the use of the bus as a motor vehicle was insufficient to impose liability under the no-fault act. Summary disposition was therefore properly granted.[2]

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan
/s/ Michael F. Gadola

---

[2] We decline to reach defendant's additional argument, as did the trial court, that plaintiff's claim for PIP benefits also is barred by the one-year-back rule, MCL 500.3145(1).